JOSIAS YOUNG, *et al, vs.* THE STATE OF MARYLAND.
*December,* 1835.

When a bond is filed with the county clerk, there to remain and become a public record, it is not in legal contemplation in the possession of the plaintiff in an action brought upon it. His *profert* therefore of such a bond is gratified by the production of an office copy, in answer to the prayer of *oyer*.

In giving a form for sheriffs' bonds, the legislature has not declared that a failure to comply therewith *literally*, shall avoid the bond, when executed.

Substance, and not form, is to control the construction of legislative enactments, prescribing a mode in which acts are to be done.

Under the act of 1715, ch. 47, the form of the acknowledgment to be taken by a feme covert, as grantor of a deed, is prescribed for her benefit; yet a literal compliance with the specified form has never been required.

A bond which subjects the sheriff and his securities to all and the same obligations imposed on them by the act of 1794, ch. 54, sc. 8, is a substantial compliance with that act.

The words "that if the above bounden B. as sheriff of P. G. county, do and shall well and faithfully execute the same office in all things appertaining thereto," found in the condition of a sheriff's bond, are sufficient to enforce the performance of the duty of detaining persons taken by him in execution, and do not alter his liability in respect to process *not* delivered to him—and the bond, although defective, in not noting those portions of the *formula* given in the act of 1794, which relate to those duties, is still a substantial compliance with that law.

The endorsement, "We the subscribers, two of the members of the Orphans' Court for P. G. county, approved the annexed bond O. D." found on an office copy of a sheriff's bond, is sufficient to show, that the Orphans' Court of said county determined upon the sufficiency of the sureties offered in such bond.

The delivery of a sheriff's bond by the justices of the Orphans' Court to the clerk of the County Court to be there recorded, shows that the bond was so accepted by that court, as to be obligatory upon its signers.

The failure of the justices of the Orphans' Court to attest a sheriff's bond, is no objection to its validity. That attestation was not required for the benefit of the sheriff or his sureties, and formed no inducement to their entering into the contract; but was intended to multiply the facilities by which their liability would be rendered certain.

The act of 1752, ch. 1, sec. 5, in requiring two witnesses to attest deeds of manumission designed to surround those acts with that form and solemnity, that slave-holders might be guarded against the execution of hasty and inconsiderate deeds of manumission.

APPEAL from *Prince George's* County court.

This was an action of *debt*, instituted *November* 4th, 1833, by the *State of Maryland*, against *Bruce*, the principal, (who confessed judgment) and the appellants, as his sureties, in a bond given by him as sheriff of *Prince George's* county, dated the 18th day of November, 1830, with the following condition and endorsements thereon :

"The condition of the above obligation is such, that if the above bounden *Thomas Bruce*, as sheriff of *Prince George's* county, do, and shall, well and faithfully execute the same office, in all things appertaining thereto, and shall also render to the several officers within this State, a just and true account of all fees placed in his hands for collection, within the time limited by law, and shall also, well and truly pay all sums of money received by him, and also collect and pay all public dues, fines and forfeitures, which are due or belonging to the State, and shall also well and faithfully execute, and return, all writs, process and warrants, directed and delivered,—and shall also pay and deliver to the person or persons entitled to receive the same, all sum, or sums of money, tobacco, goods, chattels, or property, by him levied, seized, or taken, agreeable to the directions of the writ, process, or warrant, under which the same shall have been levied, seized, or taken ; and shall also keep and detain in safe custody, all and every person, or persons committed to his custody for want of bail, without suffering them, or any of them to escape or depart from his custody : and shall also satisfy and pay all judgments

which shall be rendered against him as sheriff, and shall well and truly execute, and perform, the several duties required of, or imposed upon him by the laws of this *State*, then this obligation to be void, and of none effect, otherwise to be, and remain in full force," &c.

The endorsements, other than the certificate of the qualification of the sheriff, by taking the usual oath of office before a justice of the peace, are as follows:

"We the subscribers, two of the members of the Orphans' Court, for *Prince George's* county, approve the annexed bond,

B. ODEN,

JOHN DUVALL,

Enrolled the 18th day of November, 1830."

*Profert* of the bond having been given by the plaintiff in his declaration, upon the defendant's prayer of *oyer*, an *office copy* was read to them; when the defences spoken of by the learned judge who delivered the opinion of this court, were interposed by way of plea.

The plaintiff demurred generally to the pleas, and the county court having sustained the demurrer, and given judgment thereon for the plaintiff, the defendants brought the record before this court by appeal.

The cause was argued in this court, before STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, Judges.

MAGRUDER and PRATT for the appellants, contended,

1. That to the validity of this, as of other bonds, a delivery is essential, and there cannot be a delivery, until the bond has been accepted by the obligee, or in the manner, or by the person, authorized by some statute to receive it. *Jackson vs. Dunlap*, 1 *Johns. cases* 114.

2. The *State*, the obligee of this bond, never has accepted it, as the bond of the sheriff of *Prince George's* county, unless the forms and solemnities with which bonds of this description are required to be executed, as prescribed by the act of Assembly have been observed.

3. The act of Assembly does not authorize every judge of the Orphans' Court to approve of the bond. Those only are authorized, who attested the execution of it, and consequently knew, that the several obligors did in fact execute it; such is not the case in the present instance, the judges who approved, did not attest the bond. *Kerr vs. the State,* 3 *Harr. and John.* 560. *Shirers vs. Wilson,* 5 *Ib.* 130.

4. The condition of the bond, is not according to the act of 1794, ch 54, sec, .8, which prescribes the form. *Act* 1806, *ch.* 16. It is so framed, as in some respects to enlarge, and others .to diminish the extent of the sheriff's responsibility. The words "or by him taken in execution," are omitted, so that he is only required to detain in custody, persons committed for want of bail. This omission restricts his responsibility, whilst the omission of the words "to him," in that part of the condition, which speaks of the execution, and return of process, makes him liable, though the process may not have been delivered to him. The bond being required by the 42d article of the constitution, and the form prescribed by the Legislature, a departure from the literal *formula* is fatal. 2 *Saun. Rep.* 59, *(A. B.)* *Fergusson vs. Harwood,* 7 *Cranch,* 413.

5. If however a literal compliance with the act of Assembly is not essential, a substantial conformity with the prescribed form, must be observed, and such is not the case here. Duties appertaining to the office are not provided for in the bond, and obligations imposed which it would be impossible to perform. *Stuart et al, vs. Lee, Governor et al,* 3 *Call,* 421. *U. S. vs. Morgan and Farquhar,* 3 *Wash. C. C. R.* 10. *Quynn vs. the State,* 1 *H. and J.* 36. *Branch et al, vs. Commonwealth,* 2 *Call.* 510. *Morgan vs. Blackstone,* 5 *H. and J.* 61. *Morgan vs. Morgan Ad. of Boothe,* 4 *Gill and Johns.* 395. *Kerr vs. the State,* 3 *H. and J.* 560. 2 *Am. Law Journal* 80.

6. The omission of the attestation is itself fatal. *Negro James vs. Gaither,* 2. *H. and J.* 176.

7. Nor is it good, as a common law, or voluntary bond.

*Arnold vs. Allen, et al.* 8 *Massa. Rep.* 147. *Morgan vs. Morgan, Ad. of Boothe,* 4 *G. and J.* 395. *Frazier vs. Frazier,* 2 *Leigh* 642. *Morse vs. Hodsdon,* 5 *Mass. Rep.* 314. *Morgan vs. Blackstone,* 5 *H. and J.* 61. *Stuart et al, vs. Lee and Governor,* 3 *Call.* 421. *Branch et al, vs. Commonwealth,* 2 *Call.* 428. *Commonwealth vs Jackson.* 1 *Leigh* 485.

8. Though the sheriff, under this bond may have exercised the duties of the office, he was not sheriff *de jure,* and of course not entitled to the emoluments; and it was competent to the Executive, after the expiration of the period fixed by law, for the giving the bond, to have commissioned the person next upon the return. *Act* 1715, *ch.* 46, *sec.* 7. 1716, *ch.* 1.

9. But conceding *(ex gratia argumenti,)* the bond to be good as a common law or voluntary bond, an action upon an attested copy cannot be sustained.

BAILEY, (attorney general,) and BOWIE for the appellee, contended,

1. That the bond is good as a statutory bond, notwithstanding the omission of the judges, who approved it, to attest its execution; the requirements of the law in that respect, being merely *directory* to the judge, and forming no part of the contract of the parties to the obligation. It was the safety and convenience of the public, which was in the contemplation of the legislature. The attestation was required, as a means of authentication only, and not as essential to the validity of the instrument. The security of the public was the end aimed at. *Speak et al, vs. U. States,* 9 *Cranch* 28. *U. S. vs. Vanzandt,* 11 *Wheat,* 184. *Bartlett vs. Welles,* 3 *Massa. Rep.* 86.

2. There is no substantial departure from the form prescribed by the act of Assembly, nor does the bond enlarge the legal responsibilities of the officer. It binds him to no duty, which the law regulating the duties of his office does not impose upon him; and therein, is distinguishable from the cases cited on the other side, in all of which, obligations

33     v.7

were stipulated for, which the law did not enjoin. *Arnold vs. Allen,* et al, 8 *Massa.* 147.    *Clap vs. Guild, Ib.* 153.    *Armstrong et al, vs. U. States,* 1 *Peters C. C. R.* 46.    *U. S. vs. Sawyer,* 1 *Gallison,* 99.    *The Brig Struggle, Ib.* 476. 2 *Am. Law Journal,* 458.    *Hamilton vs. the State,* 3 *H. and J.* 503.    *Webster's Lessee vs. Hall,* 2 *Harr. and McHen.* 19. *Hollingsworth vs. McDonald,* 2 *H. and J.* 237    *Hale vs. Gittings, Ib.* 390, 395.    *Beall vs. Lynn,* 6 *H. and J.* 355. *Waters vs. Riley,* 2 *H. and G.* 311.    *Speak, et al, vs. U. S.* 9 *Cranch,* 38.

The stipulation, that he will, well and faithfully discharge the duties of the office, is itself sufficient, without a specification of those duties in detail.    *Waters vs. Riley,* 2 *H. and G.* 311.    *Morse vs. Hodsdon,* 5 *Massa. Rep.* 314.    Those words were added for the purpose of guarding against omissions, which the Legislature must have known would frequently occur in so long an instrument.    Statutes *pro bono publico,* like the one under consideration, are to be liberally expounded.    A literal compliance is never required, when the substance and spirit of the law can be accomplished. *State vs. Boyd,* 2 *Gill and Johns.* 374.

The legislature in requiring the sheriff to give bond, and prescribing the form of that instrument, were looking to the good of the public, and not of the officer, and such an interpretation shall therefore be placed upon their act, as shall accomplish the purpose in view.    Will this be done, if immaterial verbal omissions are seized upon, to avoid the instrument upon which the public safety reposes?    The courts will not decide against the validity of official bonds upon slight grounds.    *Laurenson vs. the State,* 7 *H. and J.* 339.

3. But though not good as a statutory bond, it is good, as a common law bond voluntarily entered into.    *Johnson vs. Merriwether,* 3 *Call,* 454.    *Hewlett vs. Chamberlain,* 1 *Wash. Va. Rep.* 367.    *Arnold vs. Allen, et al,* 8 *Massa. Rep.* 147.

DORSEY, Judge, delivered the opinion of the court.

This case being brought up by an appeal from the judg-

ment of the county court given upon a general demurrer to the pleas of the appellants, it is insisted by them, that conceding the insufficiency of those pleas, the judgment must be reversed, because, *profert* of the original bond being made upon the prayer of *oyer*, there was read to them instead of the original bond, an exemplification of the record thereof. That this was a prior substantial defect in the pleadings of the plaintiff below, and the court being bound to mount up to the first defect in pleading, could render no judgment in his favour. But this ground of reversal cannot be sustained. The opinion of this court, in *Butler and Belt vs. the State use of Contee and Bowie,* is decisive of this question. It was there held, that the bond being filed with the county clerk (as it was in this case) there to remain and become a public record, could not in legal contemplation be in the possession of the plaintiff, or be the subject of a *profert ;* and that the mere fact of *profert* imposed on the plaintiff no obligation to produce the original bond upon *oyer* craved. The *oyer* given in this case, was the only *oyer,* in the power of the plaintiff to give.

The next question to be considered is, do the pleas, or either of them, of the defendants below, present a legal bar to the plaintiff's right to recover ? The defence set up is, that the bond is of no legal validity. *First,* because it has not literally pursued the form for sheriffs' bonds contained in the act of 1794, c. 54 sec. 8. *Secondly,* because it has not substantially complied with that form. *Thirdly,* because the bond was not attested by the two justices of the Orphans' Court, by whom it was taken. And *fourthly,* because no judgment was passed by them on the sufficiency of the securities offered. In giving a form for sheriffs' bonds, the legislature have no where said, that all bonds thereafter given by sheriffs, not in literal pursuance thereof, shall be void. Such a provision, instead of protecting and promoting the rights and interests of the *State,* and the community at large, which was the design of the *General Assembly,* would in its practical operation, have been suicidal of the very

objects which it was intended to accomplish.   Every man acquainted with the history of judicial proceedings well knows, that conformity, to the letter in an instrument of this character and length, is of rare occurrence.   With a knowledge of this fact, which we must impute to the legislature, it would be unreasonable to suppose, that they intended to open the wide door of immunity to those, from whom, it was their great object to deprive of every avenue of escape from responsibility.   That substance, and not form, is to control the construction of legislative enactments, prescribing a mode in which acts are to be done, is evinced by the decisions of the courts of this *State*, in a case much stronger than the present.   By the 11th section of the act of 1715, c. 47, it was provided, " that if any *feme covert*, be named as a grantor in any such writing indented, the same shall not be in force, to debar her, or her heirs, except upon her acknowledgment of the same, and the person or persons, taking such her acknowledgment, shall examine her privately, out of the hearing of her husband, *whether she doth make her acknowledgment of the same, willingly, and freely, without being induced thereto, by fear, or threats of, or ill usage by her husband, or fear of his displeasure,*" " and that the person or persons so examining her shall (in a note or certificate of the taking of the said acknowledgment) certify her examination and acknowledgment thereupon."   Yet, although the form of acknowledgment is thus strictly prescribed, for the benefit too of the *feme covert*, and her heirs, a literal compliance with the specified form has never been required ; a substantial conformity being all that is requisite.   *Hollingsworth et ux. vs. McDonald and al*, 2  *Harr. and John.* 230.·

Does the bond in this case, subject the sheriff and his securities, to all and the same obligations, designed to be imposed on them by the act of assembly referred to ?   If so, the act of the legislature has been substantially complied with.   The commencement of the condition of the bond provides, " that if the above bounden *Thomas Bruce*, as sheriff

of *Prince George's* county, do and shall well and faithfully execute the same office in all things appertaining thereto." Under this provision, we think the sheriff is bound to the discharge of every duty, which the omitted words, if inserted in the condition of the bond, would have imposed upon him. The bond upon which the present action is founded, we therefore regard as sufficiently accordant to the form set forth in the act of assembly, to render it obligatory on the Sheriff and his securities. Does it appear, that the Justices of the Orphans' court, as required by law, did judge of the sufficiency of the securities offered by the Sheriff, is the next inquiry? There is no mode, marked out by the act of assembly, by which such their judgment is to be evidenced; no form of words, by which it is to be expressed. No approval is required to be indorsed on the bond. What meaning will you ascribe to the indorsements in this case made by the Justices of the Orphans' Court, unless you regard it, as the written expression of their opinion, that the securities are sufficient? Nay, their delivery of the bond to the county clerk to be recorded, might perhaps be regarded as competent testimony to prove their recognition of the sufficiency of the securities; it certainly is sufficient to remove one of the objections urged in the argument, that the bond was never so accepted, as to be obligatory on its signers.

The only remaining objection, suggested to the validity of this bond, is, that it was not attested, by the Justices of the Orphans' Court, as required by the act of Assembly. Does this omission exonerate the Sheriff and his securities, when the instrument they have signed, is viewed as a statutory bond? Was the prescribed attestation designed for their benefit? Did it form any inducement to their entering into the contract? Assuredly not.—The requisition was made solely for the benefit of others. Not to limit or impair the liabilities of the Sheriff and his securities; but to multiply the facilities by which their liability would be rendered certain.—There is nothing then in the nature of the contract, nor in reason, or justice, which should give to the omission

of this ceremony, the effect of annihilating this bond. The act of assembly does not intimate such a legislative intent; no such consequence can be deduced from the numerous authorities cited in its support. The cases of *the United States vs. Morgan and Farquhar*, 3 *Wash. C. C. Rep.* 10. *Stewart and others vs. Lee. Governor, &c.*, 3 *Call*, 364, and *the United States vs. Hipkin and others*, 2 *Amer. Law Journal* 80, can have no influence on the case at bar. The statutory bonds, were there declared void, because the liabilities of the obligors, by the terms of their bonds, were extended beyond the provisions of the statute under which they were taken— *Johnson, et al securities of Williams vs. State of Maryland*, 3 *Har. and McH.* 221. *Quin vs. the State use of Pue and others.* 1 *Har, and John.* 36. *Branch and others vs. The Commonwealth*, 2 *Call.* 510. *Morgan vs. Blackiston.* 5 *Har. and John.* 61, *and Morgan vs. Morgan, Admr. D. B. N. of Booth*, 4 *Gill and John.* 395; are cases where the liability sought to be enforced, was not covered by the bonds whereon the suits were prosecuted. In the case of *Kerr, et al vs. the State use of the Levy Court*, it was held, that the statutory bond was not binding, because the principal, therein named, was not appointed according to the directions of the act of assembly; and consequently, not being the officer recognized by the law, he could give no official bond under it. In *Frazier vs. Frazier's Exr's*, 2 *Leigh*, 642, the bond was in substance not comformable to the statute. The case of *negro James vs. Gaither*, 2 *Har. and John.* 176. is clearly distinguishable from the present. The act of 1752, *ch.* 1, *s.* 5, in requiring two witnesses to attest deeds of manumission, designed to surround those acts, with this form, and solemnity, that slave-holders, might be guarded against the execution of hasty inconsiderate deeds of manumission. To have given efficacy to such a deed, by a single witness would be to deprive the master of the protection, with which the law had surrounded him, contrary to the manifest intent of the legislature. In the case before us, the securities of the sheriff, seek to be absolved from all liability on their bond,

by reason of the omission of a ceremony prescribed not for their protection, but to render them more securely bound; and which never was designed in any possible aspect of their case, to operate to their benefit. There is therefore no reasonable ground, upon which they can insist upon a compliance with this ceremony, or indulge in complaint in consequence of its non-observance.

The authorities bearing upon principles of analogy, more directly upon the case now under consideration, are *The United States vs. Speake and others,* 9 *Cranch,* 28. *The United States vs. Kirkpatrick,* 9 *Wheat,* 720 *; and the United States vs. Vanzandts,* 11 *Wheat.* 184. In the first of which, a bond taken under the embargo law of 9th January, 1808, instead of *before,* was executed *after* the clearance or departure of the vessel, was held by the *Supreme Court* to be binding upon the obligors, they declaring, that "the statute as to the time of taking the bond, and granting the clearance, is merely directory to the collector. It is undoubtedly his duty to comply with the literal requirements of the statute. If he neglect to do so, it may subject him to personal peril and responsibility." And in the latter case, the court says, "the provisions in both laws, are merely directory to the officers, and intended for the security and protection of government, by ensuring punctuality and responsibility; but they form no part of the contract with the surety."

But the case bearing in principle the strongest similitude to the present, is that of *Bartlett vs. Willis and others,* 3 *Mass.* 86. An action was instituted by a creditor, against his debtor, and his securities on a bond for prison bounds, that by the statute under which it was taken, was required to be approved of by two justices of the peace; a formality wholly neglected. The court held, that this formality was designed for the debtor's benefit, to prevent oppression by the creditor; that the omission was the fault of the debtor, and his securities, and that they were answerable in the same manner, as if the bond had been approved. By the creditor agreeing to take the bond, "the intent of the statute is complied with,

and there is no necessity for the approbation of the sureties, by the justices to entitle the debtor to the privileges and liberties granted by the statute, or to indemnify the sheriff for allowing them." So in the case at bar, the justices of the Orphans' Court, the agents of the public, authorized to take the bond, having approved of the securities and accepted it, the mere omission of the formality of attestation, will not impair its obligatory influence on its makers; or withhold from the sheriff that investiture of official authority, with which he would have been clothed by its formal attestation. It is the omission of a duty purely directory of a ceremony designed for the protection of the *State* and its citizens ; but not indispensable to their safety. A departure from directions, rendering the justices of the Orphans' Court accountable to the public, but in no wise affecting the validity of the bond.

By the act of 1806, *Ch.* 16, *Sec.* 1, the mandate to the justices of the Orphans' Court, to deliver the bond for record, to the county clerk, and to the clerk to record it, is equally imperative with the mandate to attest it. Suppose these justices, after approving the securities and taking the bond, omit its delivery to the county clerk, retaining it in their own possession ; or suppose the county clerk after its delivery, should neglect to record it. Upon a suit being instituted, against the sheriff and his securities for his official misconduct, could they exempt themselves from all responsibility, by pleading the fact of such omission or neglect ? Such a defence would not be listened to for a moment.

There is nothing in the 42d article of the Constitution of *Maryland,* as has been supposed, impugning the remedy on the bond sought by the appellee. It simply provides, that no sheriff shall act before he has given bond; a condition precedent in this case, substantially complied with.

The views we have expressed on this case, render it wholly unnecessary for us to examine the authorities adduced, to prove that this bond if not available as a statutory instrument, could or could not operate as an obligation at common law.

JUDGMENT AFFIRMED.

*Chambers, Judge,* dissented.