# MARYLAND REPORTS.

## ALEXANDER MILBURN and his Securities, *vs.* The STATE OF MARYLAND.

The certificate of the treasurer, to an account against a collector of State taxes, authenticates itself.

The execution and delivery of a bond, in the absence of testimony on the part of the defendant, is evidence of the approval and acceptance of it by the obligee; but signing, sealing and delivery, are only *prima facie* evidence of acceptance and approval. The defendant may admit the signing, sealing and delivery, and yet prove the non-approval and non-acceptance of such obligation.

If the defendant's plea admits the execution, delivery and approval of the bond, it cannot deny the contents of the bond.

Testimony inadmissible in itself, becomes competent and proper, by the admission of other evidence, to which it may be a reply.

The act of Assembly of 1844, ch. 236, was not designed to take from the commissioners the power to appoint a collector after the first day of May, if the governor had not exercised the authority which that law conferred on him.

UPON appeal from St. Mary's county court by the defendants therein.

This action was brought upon the bond of Alexander Milburn, who had been appointed the collector of taxes in St. Mary's county; the other appellees were his securities. The bond bears date 26th April 1845, and is conditioned for the faithful performance of his duty as collector of the State taxes for the year 1845. Oyer being given, the defendants in the court below pleaded:—1st. General performance.

1    v.1

2nd. That the said Alexander Milburn was appointed, by the commissioners of St. Mary's county, collector, on the 6th May 1845, and not before, and on 6th May 1845, the said commissioners had no legal power or authority to appoint a collector of the State tax.

3rd. That the said commissioners failed and omitted to make any legal levy of the State tax for 1845.

4th. That the said commissioners did not at the time of meeting, for the purpose of levying the county taxes, in the year 1845, impose an assessment or tax for the use of the State.

To the first, third and fourth pleas, the State replied by way of a traverse, and to the second plea there was a general demurrer. The court sustained the demurrer.

Upon the issues joined on 1st, 3rd and 4th pleas, there was a trial and verdict for the defendant. The State took an appeal, and, at June term 1850, the Court of Appeals reversed the judgment and remanded the cause to St. Mary's county court, in order to have further proceedings.

At March term 1851, in St. Mary's county court, the State put in a general demurrer to the 4th plea. The court sustained the demurrer, and the defendants filed another plea: (5th.) That neither after nor at the time of executing the bond on which the suit was brought, was the said bond approved of by the commissioners of St. Mary's county, whereby the said bond was wholly void.

The State put in a general demurrer to the 3rd plea, and the demurrer was ruled good. Thereupon the defendants obtained leave to amend their pleadings by adding six others.

6th. A. Milburn, aforesaid, was not appointed collector as aforesaid for the year 1845, on or before the 1st May 1845.

7th. The defendants, on or about 26th April 1845, delivered said writing to William Biscoe, William H. Hebb, and Edward Plater, as an escrow, on the condition the said A. M. should be appointed the collector, and that he was not appointed collector of the State tax for St. Mary's county for 1845.

The third, fourth, eighth and tenth were abandoned in the Court of Appeals.

9th. Bond was delivered as an escrow, on the condition that it was approved of by the commissioners, and the commissioners did not, in their corporate capacity, approve of it.

11th. Is filed by Blackistone alone, and sets forth, that on the 26th April 1845, he delivered the bond to the commissioners, on the condition that John H. Milburn should sign and seal the bond, and that he should be received and approved of by the commissioners as one of the obligors, and said J. H. M. never was so received, and so not his, (Blackistone's,) deed.

Demurrers by the State to the 5th, 6th, 7th, 8th, 9th, 10th pleas; joinder in demurrer. The demurrers were sustained by the court. The defendants asked leave to plead three other pleas, which were tendered to the court. This motion was overruled by the court, and the defendants excepted. The exception, though in the record, is not signed by any judge.

At the trial of the issues in fact, the State to maintain the issue joined on its part to the first plea, offered in evidence to the jury a statement, purporting to be made and certified by D. Claude, treasurer, and showing a balance of $2655.23 from Alexander Milburn as collector aforesaid. The defendants objected to this paper being read in evidence, and the objection being overruled by the court, the defendants took their first exception.

The second exception was taken, because of the rejection by the court of the testimony offered by Blackistone, in support of the 11th plea, which is the plea of himself alone. This testimony was, that at the time the bond was signed and sealed by him, (Blackistone,) John H. Milburn was not present, and had not signed it; that it was understood by the said commissioners and the said Blackistone, that the said bond was not to be obligatory upon him, unless it was signed and sealed by the said J. H. Milburn, and afterwards duly approved by the commissioners. To this testimony no ob-

jection was made on the part of plaintiff. The plaintiff thereupon offered to prove by Spalding, the clerk of the commissioners, that on 6th May 1845, he was the clerk of the commissioners, and had been since 15th May 1844, that the endorsement on the bond of the approval of the commissioners was in his handwriting, and in conformity with the usage of the court; and next offered in evidence the minutes of the proceedings of the court on that day.

This testimony, offered by the State, was objected to by the defendants, but the objection was overruled, and the defendants excepted.

Upon this testimony being admitted, the defendants offered to prove, by one of the commissioners of the county at that time, that the said bond never was approved by him or the court, and never was seen by him after 26th April. The plaintiff objected to the competency of the witness to disprove the minutes of the court, as recorded by the clerk, or the indorsement of approval on said bond, and the court sustained the objection, and refused to permit the testimony to be given to the jury. Because of this refusal, the defendants excepted.

Verdict being for the plaintiff, the defendants appealed, and the appeal was argued this term before LE GRAND, C. J., and ECCLESTON and MASON, J.

By *Thomas* and *Causin* for the appellants, and *Brent* for the appellees.

*Thomas* for appellants :

We object to the decision of the court upon 5th, 6th and 7th pleas.

The collector is a creature of the law, and if he be not legally appointed, he is not legally in office.

3 *H. & McH.*, 223, 235, *Johnson and others, vs. The State.* This case shows, that the collector cannot be charged with the performance of any duty, which the law does not expressly impose upon him.

See the act of 1841, ch. 323, extra session, for the manner in which a collector is to be appointed. He must give bond,

and it must be approved before he acts as collector. Section 45.

A special authority must be strictly pursued. 1 *H. & J.*, 41. See also 1 *H. & J.*, 360. 7 *H. & J.*, 91.

The levy court has only a special jurisdiction, and it must be strictly pursued. Its powers are prescribed by the act of 1794, ch. 53, sec. 1.

The act of 1841 gives, or intends to give, power to the levy court to appoint a collector. This is a bare power, to be strictly pursued.

11 *G. & J.*, 386. This case shows, that a sheriff's bond has no effect until it is approved.

The 5th plea alleges, that this bond was never approved.

*Union Bank vs. Ridgely*, 1 *H. & G.*, 418, shows, that such bond must be approved, and it was left to the jury to decide, whether the bond was properly approved.

The act of 1842, ch. 269, secs. 1 and 5, says, that the levy court must meet on the first Tuesday of April, or as soon thereafter as may be, and proceed forthwith to appoint a collector.

11 *G. & J.*, 306, *Bruce vs. State*, shows, that a sheriff's bond has no effect until it is approved, and the fifth plea alleges, that this bond never was approved.

Act of 1844, ch. 236, sec. 1. Power to appoint collector of the tax is given to governor, if none made before first of May, and after that day, levy court or commissioners cannot appoint.

See 3 *H. & J.*, 560. Acts of supervisors void, if made after the day mentioned in the law.

2 *Gill*, 28.

Strict construction is always insisted upon with suits against sureties. 9 *Wheat.*, 680.

7th plea states, that the bond was delivered as an escrow. See on this point 2nd *Bl'k Com.*, 307, as to an escrow.

6 *H. & J.*, 234, *Crawford vs. State*.

The act of 1841, ch. 23, sec. 48, says, that judgment may be entered the first term, upon the certificate of the treasurer

as to the amount due, and renders unnecessary the assignment of breaches. The State must observe the act of Assembly strictly.

As to the refusal of leave to amend, act of 1809, ch. 153, empowers the court, in its discretion, to withdraw a juror and amend the pleadings. This power was exercised in 1st *G. & J.*, 407, in opposition to a rule of court, and it was affirmed by the Court of Appeals. 5 *G. & J.*, 467. The refusal of these pleas was not a proper exercise of discretion.

The first bill of exceptions is to the admission of the certificate of the treasurer, as evidence *per se.*

The second is taken, because of the refusal by the court to admit the parol testimony offered by defendant, Blackistone, to go to the jury.

1845, ch. 5, and 1794, ch. 54, show how the bonds should have been executed.

Mr. Thomas also referred to 6 *H. & J.*, 234, and 7 *Gill*, 1.

*Causin* on the same side.

As to the power of the levy court after 1st May: See 1843, ch. 259.

As to the admissibility, as evidence, of treasurer's certificate: 1 *Greenleaf*, sec. 498; also 91st.

As to 2nd bill of exceptions: See 1st *Green*, sec. 531. *Coke*, 112, *Foster's Case*. *Wallis*, 9, and 1st *Peters*, 64.

*Brent* for the State.

With regard to the judgment on demurrer to 5th, 6th, 7th, 8th, 10th pleas, the defendants craved oyer, which was granted. In the bond it is stated, Alexander Milburn was appointed collector of the State tax in St. Mary's county. This estops the parties from denying his appointment. See 4th *Gill*, 191, *Lloyd vs. Burgess.*

The fifth plea says, the bond was not approved. This is a plea after oyer, which admits the identity of the instrument. If the defendant intends to deny it, he must plead *non est factum.*

The plea of delivery of an escrow, is to the original bond, and not to a copy.

If the law requires a bond or deed to be executed, the recording of it is evidence, *prima facie*, that all the prerequisites have been complied with. In a suit upon a copy, it must be pleaded that the original bond was delivered as an escrow, if the defendant designs to make such a defence. The plea here is, that the copy was delivered as an escrow. The defendants ought to have set out the original bond, and to have said that that was delivered as an escrow.

The act of 1841, ch. 23, requires the collector's bond to be executed, as the act of 1794, ch. 54, required such bonds to be. The last act says, that an official copy shall be as available, as if the original bond was proved. The act of 1845, ch. 5, authorises these bonds to be recorded in the county court. This last act seems to dispense with the necessity of recording the probat by the witnesses to the bond. Can the court say, that the probat was not made in this case by the witnesses?

In 7 *H. & J.*, 343, court said, it will be presumed that the collector took the oath of office.

The 5th plea says, the bond was not approved. He had given bond after his appointment. It was his duty to get the bond approved, and if he failed to do it, his sureties cannot take advantage of that.

See *Young vs. State*, 7 *G. & J.*, 261. See also 1*st H. & G.*, 430. If the bond be retained by the corporation, this is evidence before the jury of the acceptance and approval of the bond.

This 5th plea denies only one of the averments in the nar. The others are admitted, and those admitted imply an approval by the commissioners.

6th plea sets forth, that A. Milburn was not appointed the collector on or before 1st May 1845. The bond estops the defendants from denying the appointment, and where is the law which restricts the commissioners in making the appointment to the 1st May?

The act of 1838, ch. 67, allows the commissioners to make levy at any time, and changes the law of 1794, ch. 53. The act of 1842, ch. 269, sec. 1, allows the commissioners to meet in April, or as soon after as may be convenient.

Act of 1844, ch. 236, sec. 1, gives the governor power to appoint. This does not take from the commissioners the power to appoint at any time before the governor exercises that power.

Until the notice required by the act of 1843, ch. 208, sec. 20, is given to the governor, he has no power to appoint.

7th plea. The defendants cannot say, that the bond was delivered as an escrow, because that would contradict the admission and estoppel in the bond.

8th plea is, that the bond was not approved on or after the 1st May. This is bad, because if it had been approved before that day, it would have been a good bond.

The 10th plea alleges, the non-qualification of the collector on or before the first day of May. But he was not bound to qualify before that day.

As to the refusal to withdraw a juror, in order to allow the defendants in the court below to file additional pleas, from this no appeal can be taken. 5 *H. & J.*, 174. 6 *H. & J.*, 151. Those three pleas contain matter which might have been used under a plea of *non est factum.* Moreover, there is no exception signed and sealed to this refusal. See 2 *H. & J.*, 345. 7 *G. & J.*, 494.

In regard to the next bill of exceptions, Mr. Brent referred to the act of 1841, ch. 23, sec. 45, and said, that under this law, the defendants must specify and give notice of any grounds on which they intend to rely for defence. They cannot therefore insist, that the treasurer's certificate should be proved, before it went in evidence to the jury.

Last exception. This is taken by Blakistone, one of the defendants below, to his plea, (the 11th.) Can he sever in pleading? The plea admits virtually, that J. H. Milburn did sign the bond, but that it never was accepted and approved.

Is there any exception here to any thing, except to the testimony of Mr. Biscoe?

*Causin* for appellants.

In 3 *G.*, 335, *Miller vs. Fiery*, there is no question as to the admissibility of the minutes of the orphans court. They were offered and not objected to.

As to the refusal to allow the withdrawal of a juror, he insisted, that whenever a discretion is to be exercised, an appeal will lie, if the discretion be improperly exercised.

1 *G. & J.*, 53. 2 *H. & G.*, 82.

This is not a proper case for an exception by a bill of exceptions.

6 *H. & J.*, 232, shows, that the plea of *escrow* may be used with the plea of *non est factum.*

Special plea of *non est factum*, need not be under oath. See 6 *H. & J.*, 231, *Muir vs. Crawford. State vs. Young*, 7 *G. & J.*, 253. By demurring, the plaintiff has lost his right to object to a want of the oath.

The oyer craved, was of the writing obligatory and the condition.

5th plea. The approval of the bond is necessary. There is nothing in the record which estops us from taking advantage of the want of approval. The act of 1845, ch. 5, does not do away with the formalities required by the act of 1794.

The plea does not deny the execution, but the approval, and therefore there can be no estoppel.

A demurrer carries us back to the first defect which is in the bond.

6th plea does not contradict the bond. Dates are no estoppels. See *Fiery vs. Miller, 3rd Gill.* 3 *Wend.*, 484, 485.

A party may, when sued upon a contract made with a corporation, deny the power of the corporation.

7th plea. See 1*st H. & G.*, 418.

All the testimony in the second exception admitted without objection.

The levy court transcended their powers in the appointment after 1st May 1845. See 1841, ch. 23, sec. 45. 1842, ch. 269, sec. 1. 1843, ch. 259. See 3 *H. & J.*, 560. 1 *East's Reports*, 70.

As to *shall,* 1843, ch. 208.   1 *Peters' Rep.*, 64, *may* is imperative.   *Wallis* on *Stat.*, 9*th Law Lib.*, 639, may be repealed by implication.

1844, ch. 236, is the act under which this bond was given, and requires the governor to appoint, on 1st May next, in counties wherein no collectors were duly appointed.   6 *Coke,* 112, 119.   Where one is named in a statute, all others are excluded, although the language be affirmative.

LE GRAND, C. J., delivered the opinion of the court.

"This is an action instituted in St. Mary's county court, upon the bond of Alexander Milburn, given by him and his sureties for the faithful performance of his duty, as collector of the State tax for the year 1845.   In bar of the right of the plaintiff to recover, the defendant interposed eleven pleas. The case having been before the late Court of Appeals, it is conceded the opinion then pronounced, settled adversely to the defendants, the third and fourth pleas.   There is no appeal from the ruling of the court on the demurrer to the second plea, and the eighth and tenth, as is the case with the third and fourth, have been abandoned by the counsel.

The questions we are now called upon to decide, arise out of the demurrers to the fifth, sixth and seventh pleas, and the bills of exception.

The substance of these pleas is as follows:

Of the 5th.   That the bond was never approved by the commissioners of the county.

Of the 6th.   That Alexander Milburn was not appointed collector *on or before the* 1*st day of May* 1845.

Of the 7th.   That on or about the 26th day of April 1845, the bond was delivered as an escrow, on the condition that Alexander Milburn should be appointed the collector, and that he was not appointed collector of the State tax for St. Mary's county for the year 1845.

On the 1st, 9th and 11th pleas, issue has been joined.

The question presented by the demurrer to the 5th plea, is simply this, shall a defendant be permitted to deny the ap-

proval, while he admits the execution and delivery of the bond?

It is contended on behalf of the appellees, that the confession of the signing, sealing and delivery of the bond, *necessarily*, as a presumption of law, establishes also its acceptance and approval. To support this view, the case of the *Union Bank of Md. vs. Ridgely*, 1 *Harr. and Gill*, and the case of *Young vs. The State of Md.*, 7 *Gill and John.*, are relied on. We do not understand these cases to go the extent insisted upon. It is true, that the execution and delivery of a bond is evidence, *when not rebutted*, of its acceptance and approval by the obligee; but these circumstances do not create what is known as a presumption of *law*, so as to prevent the obligors from denying, by competent testimony, the fact of acceptance and approval. We understand the cases referred to as establishing merely, that signing, sealing and delivery, are *prima facie* evidence of acceptance. In neither case is it held, that it would be incompetent for the signers to show, by testimony, that the bond had not been accepted and approved; they merely speak of the enumerated facts, *"in the absence of evidence on the part of the defendants;"* and, from the language of the court in 1 *Harr. and Gill*, it is clearly implied, that it was competent for the defendants to offer testimony touching the point, and in opposition to the presumption of *fact* arising from the execution and delivery of the instrument. Now the 5th plea denies the approval. This court cannot see what evidence it was in the power of the defendants to offer, to sustain the averment of the plea. For aught this court can know, they may have been able to shew, that the commissioners of St. Mary's county *positively refused* to approve the bond, and that the clerk, in violation of his instructions, made an incorrect entry upon the minutes of proceedings, and had they produced such evidence, the plea would have been sustained. We are of opinion the demurrer should have been overruled.

The sixth plea sets up the defence, that Alexander Milburn was not appointed collector on or before the 1st day of May

1845. This plea is bad. It admits the execution, delivery and approval of the bond; and this being so, it is not competent for the defendant to deny the contents of the bond, among which is to be found the fact, that he had been "appointed collector for the State tax in St. Mary's county for the year 1845." See upon this point, the case of *Lloyd, adm'r, &c., vs. Burgess*, 4 *Gill*, 187, and also the case of *Fridge vs. The State*, 3 *Gill and John.*, 103. The demurrer was properly sustained.

The seventh plea avers, that the bond was delivered as an escrow, on the condition that Alexander Milburn should be appointed collector of the State tax in St. Mary's county for the year 1845, and that he was not appointed. This plea is defective for the same reason assigned in regard to the 6th. It admits the execution and the delivery of the bond, and the defendants are *estopped* from a denial of its recitals, one of which, as before observed, is the appointment of Milburn.

The ninth plea, on which issue has been joined, is in substance, that the bond was delivered as an *escrow*, on the condition that it should be approved by the commissioners, and that the commissioners of St. Mary's county did not, in their corporate capacity, approve it. The eleventh plea is on the part of only one of the defendants, James T. Blackistone, and avers, that he, on the 26th day of April 1845, delivered the bond to the commissioners, on the condition that J. H. Milburn should sign and seal, &c., the bond, and that he should be received and approved by the commissioners as one of the obligors, &c., and that J. H. Milburn never was so received.

The difference between the 9th and 7th pleas consists in this: in the latter, the delivery is averred to have been made on or about the 26th April 1845, whilst in the former, no time is fixed for the delivery. Both of them are special *non est factum* pleas. We do not deem it necessary to consider, whether the ninth plea should have been verified by affidavit, as is required by the act of 1785, in the case of a general *non est factum* plea; issue having been joined on it, and the sixth and seventh pleas having been generally demurred to, the

question does not arise in this case. For the same reason we are not called upon to enquire, whether Blackistone had a right to put in the 11th plea.

Before proceeding to consider the questions presented by the exceptions in this case, we will dispose of the motion of the defendants, that a juror should be withdrawn and leave granted to file the 12th, 13th and 14th pleas, displayed in the record. We do not feel ourselves called upon to determine the precise character of the discretion vested in the county court by the act of 1809, ch. 153, allowing amendments to be made, because the question is not before us on this record. An examination of it will show, that although the defendants excepted to the refusal of the court to allow the withdrawal of a juror, and of an amendment to the pleadings, the exception was neither signed nor sealed by the court. It is in law no exception, and therefore no question can arise from it. *Davis vs. Wilson*, 2 *Harr. and John.*, 345, establishes, the exception must be sealed by the court.

The question presented by the 2nd exception, (the first signed and sealed,) is, did the court err in allowing to be given in evidence the statement, *purporting* to be made and certified by D. Claude, treasurer? Were it not for the strength and positiveness of the language held by the court, in *Prather vs. Johnson*, 3 *Harr. and John.*, 487, a majority of the court would be disposed to hold, that error had been committed by the court below in its ruling on this point; but they consider themselves concluded by the opinion in that case. Apart from its authority, it appears to the majority of the judges who sat in this case, that the principles of evidence would have required the rejection of the paper, until it had been first shown to be the certificate of the treasurer: in other words, that it did not authenticate itself. The general principle is very clearly expressed in 1 *Greenleaf Ev.*, secs. 491 and 498. The authority, however, of 3 *Harr. and John.*, concludes the question.

It appears, from what was designed to be the 3rd exception, that the defendant, Blackistone, to support the issue on his

part joined in the eleventh plea, proved, *without objection*, by James C. Milburn, that at the time the bond in this case was signed and sealed by Blackistone, John H. Milburn was not present, and had not signed it; and that it was understood, by and between himself and the commissioners, that the bond was not to be obligatory on him unless it was signed and sealed by John H. Milburn, and afterwards duly approved by the commissioners; they further proved by William Biscoe, one of the commissioners, that at the time of the signature of Blackistone, John H. Milburn was not present.    In this state of the evidence, the plaintiff offered to prove by George Spalding, that on the 6th May 1845, he was the clerk of the commissioners, and had been since the 10th May 1844; that the endorsement on the bond, of the approval of the commissioners, was in his handwriting, and in conformity with the general usage of the court, to his knowledge; and further offered the minutes of the proceedings of the court of that day in evidence.    This evidence on the part of the plaintiff was objected to, but the court overruled the objection, and the defendants excepted.    The testimony having been given to the jury, we are of opinion, that the court erred in withholding from the same tribunal the testimony proposed to be given by William Biscoe, on behalf of the defendants, to the effect that he was one of the commissioners mentioned in the minutes, and the bond was not approved by him or by the court.    Were the testimony offered by the plaintiff and allowed by the court, inadmissible, yet, being admitted, the defendants had the right to rebut it.    There is no principle better established, or more familiar to the profession, than that testimony, inadmissible in itself, becomes competent and proper, by the admission of other evidence to which it may be a reply.    The case of *Garner vs. Smith,* 7 *Gill,* 1, is a sufficient recognition of it.    But we are of opinion, that independently of this principle, the testimony was proper and should have been admitted.    Certainly, so far as the testimony of Spalding was concerned, it was competent for the defendant to rebut it by the testimony of another witness; and holding, as we do,

that the minutes of the proceedings of the commissioners were but *prima facie* evidence of what they purported, it was competent for the defendants to contradict them, by showing they were erroneous.

From these views, it is apparent, the court are of opinion, first, that the execution, delivery and recording of the bond, are circumstances from which the law, *in the absence of competent testimony to the contrary*, deduces the conclusion, that the bond was accepted and approved by the proper authority; and second, that on the issue joined in the ninth plea, it would have availed as a sufficient bar to the plaintiff's right of recovery, had the defendants been able to have shown, that the bond in question had been delivered to the commissioners as an *escrow*, on the condition that it should be approved by them in their corporate capacity, and that such approbation *had been refused.* The execution and delivery are strong circumstances; so strong, that the law, *in the absence of opposing evidence*, deduces the additional fact of the approval. The evidence to rebut this presumption ought to be clear and explicit, and *above all doubt.*

The great and controlling question which arises out of the state of the proof, is the right of the plaintiff to recover. That question we propose now to consider.

The plaintiff proved by Spalding, and by the extracts from the minutes of the proceedings of the commissioners, that the bond *was approved and ordered to be recorded on the 6th day of May* 1845. The testimony proposed to have been given by the defendant, (and which we have said ought, in the then condition of the evidence, to have been admitted,) went to show, that there had not been an approval of the bond at *any* time. That approval is essential, is fully established by the case in 11 *Gill and John.*, 387. We, of course, speak of the *fact* of approval, and not of the *evidence* of it.

Had the jury believed the testimony offered on the part of the plaintiff, the approval would have been shown to have been given on the 6th May 1845; and had they disbelieved it and given credence to that of the defendants, then it might

have appeared to them that the approval of the bond *had been refused.*

The 1st section of the act of 1844, ch. 236, is as follows: "That if in the several counties of this State, Howard district and the city of Baltimore, collectors of the taxes now imposed, or to be imposed, for the use of this State, shall not have been duly *appointed* and *qualified,* as by the present laws are directed, it shall and may be lawful for the governor, and he is hereby *authorised and required,* on the first day of May next ensuing the passage of this act, or as soon thereafter as conveniently may be, to appoint a collector or collectors for such county or city as the case may be," &c.

This act was passed on the 5th March 1845, and the first day of May alluded to in its first section, is the first day of that month in the same year. It has been contended, that so far as the *taxes* are concerned, this section refers to those which had been or were to be thereafter imposed by law; the words being "now imposed, or to be imposed by law for the use of the State;" but so far as the *appointment* and *qualification* of the collector is concerned, it is required they should be done before the first day of May 1845, and in failure of which, the power of the commissioners ceases, and the whole matter is transferred to, and placed under the control of the governor of the State. This view has been urged with ability, and is entitled to great respect, but looking to the policy of the State in the passage of her revenue laws, and to well known principles of construction, this court cannot concur in it.

When this case was before the late Court of Appeals, it was held, that the object of the legislature was the execution of its revenue laws, "upon the successful operation of which depended the ability of the State to pay her debts, to comply with her engagements, and to preserve unimpaired and unsullied the public faith and credit;" and in furtherance of this purpose, it was decided, that although the 52nd section of the act of 1841, ch. 23, provided in words, the county and State taxes should be levied "at the same time and in the

same manner," yet it was competent to make the State levy *before* that of the county. This decision avowedly rested on the ground, that the *policy* and *intention* of the legislature should be kept constantly in view, and control, in a considerable degree, the interpretation of the language to be found in the revenue acts. If the same principle be now observed, there is no difficulty in arriving at the conclusion, that the act of 1844, ch. 236, did not design to divest the commissioners of the power to appoint and qualify the collector after the first day of May, unless the governor exercised the authority conferred on him by that act. This indeed has been the universal understanding of the act, and the local authorities have conformed to it in most of the counties in the State, so that if the views urged in regard to this point on behalf of the appellants should prevail, there are but few, if any, of the collectors' bonds, which furnish the slightest protection to the State.

In the case of the *Canal Co. vs. R. R. Co.*, in 4 *Gill and John.*, 152, the court lay down this broad and equitable rule: "Statutes should be construed *with a view to the original intent and meaning* of the makers, and such construction should be put upon them, as best to answer that intention, which may be collected from the cause or necessity of making the act, or from foreign circumstances; and when discovered, ought to be followed, although such construction may seem to be contrary to the letter of the statute." For this doctrine they refer to *Plowd.*, 205, 232. 11 *Co. Rep.*, 73. 19 *Vin. Abr.*, 519. 6 *Bacon's Abr.*, 384. And again, in the same case it is said: "That which is written in the *letter* of a statute, is sometimes *not within the statute*, not being within the intention of the makers;" and it is declared: "These principles have been recognized and adopted by courts, from the time of Rolle, Plowden and Coke, to the present day, and many cases given in proof of the declaration."

Adopting, then, these canons of construction, we can have no difficulty in determining, that until the governor exercises the authority conferred on him by the act of 1844, ch. 236,

the commissioners possessed a *concurrent* power to appoint and qualify the collector; the meaning and purpose of its provisions, in this particular, being to ensure the *collection* and *safety* of the public revenue. It is manifest from what we have said, that we are of opinion, that were it established that Milburn had been duly appointed and qualified prior to, or on the 6th of May 1845, his appointment and qualification would be legal; provided the governor had failed to make an appointment after the 1st day of May 1845.

The court discover several imperfections in the record, but it is not important to notice but one, which is, that no verdict was recorded on the first plea, viz: that of general performance.

*Judgment reversed and procedendo awarded."*

Eccleston, J., concurred.

Mason, J., dissented, and filed the following opinion:

"The learned chief justice has presented the several questions which arise in this case with so much fulness and force, as to render it unnecessary for me to repeat them in the brief reasons which I propose to submit, why I cannot concur with the majority of the court in all the legal propositions and conclusions, which, in their opinion, govern this case.

In the first place, it is apparent, that there is a moral obligation resting upon these defendants to discharge the indebtedness, which is shown to be due in this case by the collector to the State. By means of their credit, they have enabled an unworthy officer to get possession of the money of the State, and when called upon to make good his defalcations, they seek to avoid their responsibilities, by technical objections to the sufficiency and regularity of the instrument by which they designed to bind themselves as the collector's sureties.

The 1st objection which they raise to the sufficiency of the bond in question is, that it was not *approved* by the commissioners, and the majority of the court are of opinion, that if the defendants can show that the bond was *not approved*, they are not bound by it, and that the *execution, attestation* and

*delivery* of the bond, are but presumptions of *fact* and not of *law*, that the bond was approved.  I cannot concur with the court in these conclusions.  From these three facts, *execution*, *attestation* and *delivery*, (and where there is a delivery there must be an acceptance,) in my opinion, arises a presumption of *law* sufficient to establish the fact of approval; and admitting the additional fact of the formal approval of the bond by the commissioners, on the 6th May 1845, to be properly before the view of the court, I would not regard it as evidence of the only *approval* that was made, but that such an act was wholly unnecessary and supererogatory, and that the bond was valid and binding without it.  And to this extent I think I am sustained by the opinion of the court, in 7 *G. & J.*, 261, *State vs. Young.*  But I think I am warranted by judicial decisions in going farther and asserting, that in the case of the bond now in question, no formal approval is at all necessary to make it binding upon those who have signed it.  It is true, the act of 1841, ch. 23, sec. 45, in directing the appointment of collectors, says, that they "shall give bond, with good and sufficient sureties, to be approved by the commissioners."  This seems to me to be a duty imposed upon the commissioners, and does not enter into, or form a part of the contract with the sureties.  This formality was not designed for their benefit; it could in no way affect their liability or enter into the inducement which impelled them to become parties to the contract.  It was merely directory to the commissioners, and designed to protect the State.  If the neglect to comply with this provision of the act of Assembly, could increase or vary in any way the liability of the sureties, or their remedy against the principal, it would present a very different question.  But no such results as these, are pretended, could follow such an omission or neglect on the part of the commissioners.  This position I think is fully sustained by the cases of the *U. S. vs. Speake*, 9 *Cranch*, 28.  *U. S. vs. Kirkpatrick*, 9 *Wheat.*, 720.  *U. S. vs. Vanzandt*, 11 *Wheat.*, 184.  And the case of *Bartlett vs. Willis*, 3 *Mass.*, 86.  These views are also fully sanctioned by the case in 7 *G. & J.*, 263, and the principles

laid down in the above recited cases, are there adopted and incorporated into the judicial law of our State, and are therefore not only authorities in this case, but the law of the land. See, also, Judge Stephens' opinion in *Butler vs. State,* 5 *G. & J.,* 515.

It is contended in argument by the majority of the court, that the decision in 7 *G. & J.,* does not go to this length, and that if it did, it has been virtually overruled by the case of the *State and Bruce,* 11 *G. & J.,* 385, where the court, in regard to the bond in that case, distinctly announce, that the *formal approval* of the bond was necessary to its validity. I do not think that that decision affects this case, or the previous decision of this court in 7 *G, & J.* Both the bond, and the questions arising upon it, are different from those which are presented by this case.

In the case of *Bruce and others, vs. State,* the question was presented, whether acts performed by the sheriff, during the interval between the date or execution of the bond, and the time when it was approved, were *official acts* for which his sureties could be held responsible. *Approval* in that case was a very different matter from approval in this case. The bond was given under a different act of Assembly, differing materially in its provisions from the act under which the collector's bond in this case was given. That was a sheriff's bond, given under the act of Assembly of 1794, ch. 54, sec. 8. Observe particularly the requirements of that law. It says: "The sheriff's bond shall hereafter be taken on some day between the 8th day of October and the 1st day of January in each year, in the respective county courts, or out of court, before the chief justice, or the associate justices thereof; and in case of death, &c., of one of the associate justices, the other shall call in two justices of the peace, who shall, with him, judge of the sufficiency of the securities offered by the sheriff, and *attest* the execution of said bond." Here are formalities required, equal almost to the execution of a deed of conveyance or will, and clearly there could be no binding efficacy given to the bond, unless these formalities were sub-

stantially complied with.   This act even sets out the very form and language to be pursued in the bond, and makes the approval one of the formalities of qualification, and must precede the execution of the bond.   Even here it is intimated, by Judge Dorsey, in 7 *G. & J.*, 261, that the approval under this act need not be a *formal, recorded act,* but that the delivery of the bond to be recorded, is to be regarded as a sufficient recognition of the sufficiency, and an approval of the securities.

Now let me turn, for a moment, to the act of 1841, chap. 23, sec. 45, which relates to the bond to be given by the collectors of the tax, and which is the bond brought in view in this case.   This law provides, in the first place, that "the collector shall be appointed by the commissioners," and that every collector, before he acts as such, shall give bond to the State of Maryland, with good and sufficient sureties, *to be approved by the commissioners by whom such collector shall have been appointed."*   And this is all the law says upon this point.   Here, as was not the case in the other act, there is no mode or manner, no formalities or forms, prescribed, but it merely provides, that after the collector has been appointed, and the bond given, that the sureties shall be approved, &c.: but when, where, in what manner, or in what form, the approval is to take place, the law is silent, and is, therefore, wholly unlike the act of 1794, ch. 54, to which the decision in 11 *Gill and Johns.* exclusively relates.

I fully concur with the court in what they say respecting the 6th and 7th pleas.

In regard to the 9th plea, nothing need be said.   Issue was joined upon it, and the jury decided the question of fact raised by it.   Nor does any of the evidence presented to us by the bills of exception, seem to have been offered under this plea, except the treasurer's certificate—and that could have had no special relation to that issue—therefore I shall treat that plea as entirely out of the case now before us.   The same may be said of the 11th plea: except that the questionable testimony

submitted to us, was offered to the issue raised by that plea, and should be properly considered here.

The testimony, as submitted to us in the 3rd bill of exception, should be considered in reference to the issue which it was offered to support. That issue is, simply, whether the defendant, Blackistone, executed the bond as an escrow: and is the only question raised by the 11th plea. The sufficiency, regularity and propriety of admitting said plea, by the court below, in the then stage of the proceedings, are not questions now before us; nor have we presented to our view the character or effect of the evidence in question, as relating to any other issue raised in the proceedings. The same item of testimony may establish a number of different facts, or it may be evidence to prove one fact, and not admissible to go before the jury to establish another. Now, the plea raises this question: Did Blackistone sign the bond upon condition that J. H. Milburn was to be approved as one of the co-sureties? The evidence of Spalding, and the records of the board of commissioners, were offered in relation to the isolated question, and to the elucidation of that point, and that point alone, must it be confined. The majority of the court have gone further, and have applied this evidence to questions not embraced within the 11th plea, namely, to the questions of the qualification and regularity of the appointment of the collector. If this evidence had been offered to these issues, it would then be time enough for the court to act upon its admissibility and effect.

The court below admitted the testimony of the clerk of the commissioners to establish certain proceedings of the board who produced the records themselves, which contained among other proceedings, the approval of this bond by the commissioners, in their official capacity. The admission of this testimony was objected to by the defendants, but, I think, it was properly received by the court below as legal testimony: though the relevancy of it to the issue, or its necessity, might well have been questioned. *Beard vs. McCubbin,* 1 *H. & J.,* 179. 1*st Greenlf., sec.* 513.

To break the force of this evidence, the defendants then offer William Biscoe, one of the commissioners, to contradict, by parol, the record evidence of the official proceedings of the commissioners. In my opinion, this was clearly improper and irregular. The proceedings of these commissioners being of a public nature, authorized and directed by law, are presumed to be faithfully recorded. The record itself, therefore, is the only proper evidence to establish what it purports to show. In fact, it is conclusive evidence of the proceedings of the commissioners, in regard to the matter which is sought to be established or ascertained; and it cannot be enquired into collaterally, by any parol or secondary testimony. The record, itself, is not brought into question in this case; but the application here made, is to assail the truth of the facts sought to be established by the record. The case of the *State vs. Crawford*, in 6 *H. & J.*, 234, is relied on as an authority to establish the admissibility of this testimony. That case merely relates to the enrolment of bonds, and very properly decides, that the fact of being recorded, is not conclusive, but only *prima facie* evidence, of the verity of the original paper. The mere act of enrolment, perhaps, in that case, would be conclusive of that single fact, but could not be pretended was conclusive, as to the authenticity of the paper recorded. Further, in that case there was no record of the proceedings of any legal tribunal, brought in question. The only official act in question, was the act of recording, and that was not disputed, nor could it be, but the court merely said, that the genuineness of the paper, so recorded, might be inquired into. So in the case now before the court: while you cannot question the fact, that the bond was approved by the commissioners was, as shewn by the record, yet the partiess to it might well call in question, at the proper time and in the proper manner, the other prerequisites of a good bond. To establish these several propositions, and the additional plain and well established principle, that parol proof is inadmissible to contradict or vary a record : I would refer to 4 *H. & J.*, 393. 2 *H. & G.*, 42. 10 *G. & J.*, 247. *And* 1 *Greenlf.*

*on Ev.*, *sec.* 538. It may be said, that the records of these commissioners should not be regarded as such records as are contemplated by the foregoing decisions. Most of those decisions relate to the records of the orphans court: and I deem the bodies as analagous in all respects. See, also, the act of 1838, ch. 67, sec. 8, by which these commissioners are authorised to keep and use a common seal. I cannot, therefore, concur with the majority of this court, but am of opinion, that the court below were right in rejecting the testimony of Biscoe, and that the judgment ought to be affirmed on this point. It must be remembered particularly, that all these questions arise in regard to the fact, whether J. H. Milburn was appointed as one of the sureties, with Blackistone, by which, the condition upon which he signed was complied with. How far this testimony was sufficient to warrant the verdict of the jury, how far it was material to the issue joined, are questions not now before us. The latter objection does not seem to have been made in the court below; but the admissibility of the testimony, generally, seems to have been the only point raised.

According to the view I have taken of this case, there is no necessity for me to express any opinion respecting the question of conflict of power between the commissioners and the governor, in regard to the appointment of the collectors by the commissioners, after the 1st of May. All that is necessary to constitute a valid appointment and qualification, existed in this case prior to the 1st of May. The *execution*, *attestation* and *delivery* (and all these are admitted) of the bond, constitute all the evidence of *appointment and qualification* contemplated by the law. What other formalities does the act of Assembly prescribe? If any oath, signing testes, or declarations, are necessary, it does not appear to us, by this record, or by any act of Assembly before us. So far as giving the bond is necessary, all has been done that need be done, fully to qualify the collector to act.

But the court have decided, (and I concur with them,) that the governor must actually make the appointment of the col-

lector, under the act of 1844, ch. 236, in order to oust the commissioners of their power, which has not been done in this case.  If my view be correct as to the conclusiveness of the records of the board of commissioners, on this question of approval, and if that testimony is applicable to all the pleas in the case, then there is positive evidence before us that this bond has been *formally approved*, which concludes this branch of the case.

I agree with the court in excluding from our view the bill of exceptions, taken with reference to the withdrawal of a juror.

The only remaining question to be considered, is, the propriety of the court below, in receiving the treasurer's certificate as evidence.   This is comparatively an unimportant question, for upon procedendo, the error, if there was one, could easily be corrected.  But I am by no means clear, that this paper ought not to have been received.  The act of Assembly of 1841, ch. 23, makes the certificate evidence, and it would seem from the decided language of the court, in 3 *H. & J.*, 491, that in such cases the name of the treasurer to the certificate would, *prima facie*, establish the authenticity of this paper, and the burden of proof would be on the defendants, to show that it was not the treasurer's signature.

The arguments in favor of rejecting this certificate, is, that its introduction as evidence would open the door to the perpetration of gross frauds, and that any paper might be used in support of unjust and unfounded claims against collectors. I do not think that any reasons exist for such apprehensions. I have heard of individuals combining together, and it is by no means an uncommon occurrence, to defraud the State, but I have never heard of a similar combination, for the purpose of defrauding private citizens for the benefit of the State, for such would be the only result in a case like the present; and even if such an improbable desire were to arise with any of our more loyal than honest citizens, he would be deterred from gratifying it, by the obvious reason, that before the State or any one else could reap any advantage from the perpetration

of such a fraud, it would be discovered, exposed and correct-
ed. It would lead to its own correction, and would therefore
be entirely unlike a perjury or forgery in ordinary cases.

And besides, this paper, (as it was required to be,) was in
court for a considerable time before the trial, by which the de-
fendants had notice of its contents and purpose, and could
have shewn it to be a fraud, if in fact it had been a fraudulent
paper; and thus they were placed in a better situation, in hav-
ing notice of this proof, than they would have been under the
usual rules of evidence, by which the paper would have been
brought to their notice, for the first time, upon the trial.

For these reasons, I concur with the majority of the court
in regarding this certificate, as offered, as legal testimony in
the cause.

There remains but one question to dispose of, and that is
the omission of the jury, to render a verdict on the first plea:
the plea of general performance.

Under the act of 1825, ch. 117, this court is excluded from
considering any question in the record, which does not appear
to have been presented to the county court, and there deci-
ded. Questions presented by demurrer, or motions in arrest
of judgment, are not embraced in the act of 1825, and this
point neither arising upon demurrer, motion in arrest of judg-
ment, or upon exceptions, cannot be reviewed or considered
in this court, and forms no part of the case before us. *Char-
lotte Hall School vs. Greenwell,* 4 *G. & J.,* 407. *Sasscer &
Walker,* 5 *G. & J.,* 102.

For the reasons above given, I think the judgment in this
case *ought to be affirmed.*

*Judgment reversed.*