Peter A. Quinn, J.
This is a proceeding in eminent domain involving the acquisition by the City of New York of title to a 30-foot strip of vacant land on each side of Rosedale Avenue between Bruckner (Boulevard) Expressway and Story Avenue in the Borough of The Bronx, City of New York, for street widening purposes. Title to the five parcels taken duly vested on October 25, 1962.
After viewing the property and giving due consideration to all of the evidence, the following findings and awards are made:
Damage Parcel 1 — City owned — $1
Damage Parcel 2 — Street in use — $1
Damage Parcels 3, 4 and 5 are located within the 30-foot strip on the west side of Rosedale Avenue. Each involves a partial taking for which no consequential or severance damage is claimed.
Damage Parcels 3 and 4 comprise the southerly portion of the strip in common ownership. Damage Parcel 3 is part of Tax Lot 1 and Damage Parcel 4 is part of Tax Lot 59. Both tax lots are zoned for residential use. However Tax Lot 1, including Damage Parcel 3, had been granted a permit for gas station use and at title vesting was under long-term lease to one of the larger oil companies. Despite this the court finds that Damage Parcel 3 added nothing to the value of the gas station and that, under the terms, of the lease, its taking in no way affected the value of the leasehold or the rental payable thereunder. Hi consequence the court has valued both Damage Parcels 3 and 4 as residential land with Rosedale Avenue frontage and the remainder of claimant’s property as Soundview Avenue frontage. The court finds that the land in claimant’s ownership had a value before taking of $53,207, including the sum of $1,000 for the paving on Damage Parcel 3, and a value after taking of $45,767. An award is made for both these parcels in the rounded out sum of $7,500.
Damage Parcel 5 is part of Tax Lot 8. It consists of the 30-foot strip running 438.04 feet north of Damage Parcel 4 to Bruckner Expressway, comprising 12,893.34 square feet. The remainder of Lot 8 is improved with a bowling alley of 68 lanes *1078 constructed in 1962 with adjacent parking facilities. The building fronts on Soundview Avenue with the rear of the building facing Bosedale Avenue. It was built practically to the westerly line of the 30-foot strip with only a rear exit door facing Bosedale Avenue.
Prior to 1956 the entire area, including the subject block, was zoned for residential use. During this time an application had been made to the City Planning Commission by the owners in the area to change the zoning in the entire area from residential and restricted retail use to a retail use. At the time this application was made a map change had been approved and was shown on the city map for the proposed widening of Bosedale Avenue between Bruckner Boulevard and Story Avenue from 80 feet to 140 feet by taking 30 feet on each side of Bosedale Avenue. The commission noted that the proposed widening was in the area sought to be rezoned, the entire area comprising eight square blocks. Public hearing was held on February 15, 1956. Subsequently two of the applicants, the then owners of Lots 1, 4 and 8, involving the subject property, signed a written agreement dated April 18, 1956, waiving any enhancement of damages by reason of the use change sought should the property required for the widening of Bosedale Avenue be taken in condemnation within a period of 10 years and agreeing that in such event any claim would be limited to the value of the property as residentially zoned. It was provided that this agreement would constitute a covenant running with the land. Although the agreement was never recorded, both claimants concede their knowledge of its provisions at the time they acquired title. On April 18,1956 the City Planning Commission adopted a report finding that the public interest required additional shopping facilities in the area and recommended the zoning change. This report noted the map change for the proposed widening of Bosedale Avenue and that in consequence the waiver agreement of April 18, 1956 had been executed by the affected property owners. On April 26, 1956 the Board of Estimate adopted the report and changed the zoning in the entire eight-block area to a retail use district. On December 15, 1961, a general zoning resolution affecting the entire city became effective and pursuant to this resolution the subject property was rezoned to a residence use district, so that at title vesting Damage Parcel 5 was zoned residentially but with a nonconforming use as a bowling alley. Although Damage Parcels 3 and 4 were similarly rezoned, the change did not affect their value since the gas station use had been allowed by permit and not by reason of the 1956 zoning change. Thus the question, with respect only to Damage Parcel 5, is whether it should be *1079 appraised as residentially zoned (in accordance with the waiver agreement) or should be appraised as residentially zoned with an increment for nonconforming use (if it is held that the waiver agreement is not binding).
The claimant contends that the agreement of April 18, 1956, waiving enhancement of value of the strip taken by reason of the zoning change for retail use is not binding for two reasons: (1) if the waiver was a condition imposed by the Board of Estimate such condition would be illegal as constituting so-called “ contract zoning” (see 1 ‘ Zoning by Contract with Property Owner ”, N. Y. L. J., April 6, 1955, p. 4, col. 1); (2) if it was not a condition imposed and the city would have granted the zoning change without such waiver, then the agreement lacks consideration and is not binding.
The court finds that these contentions are neither factually nor equitably persuasive. The fact is that the Board of Estimate enacted the zoning change without imposing any conditions whatsoever. The entire area was changed to retail use uniformly and without restriction on the basis of a finding of necessity for increased shopping facilities in the area. This court cannot say whether the legislative body acted in reliance on the agreement or whether or not the zoning change would have been enacted in absence thereof. Even assuming that the Board of Estimate had imposed the waiver agreement as a condition for the change, it does not necessarily follow that such condition was not validly imposed in the best interests of the citizens of the City of New York (Church v. Town of Islip, 8 N Y 2d 254; Point Lookout Civic Assn. v. Town of Hempstead, 22 Misc 2d 757, affd. 12 A D 2d 505, affd. 9 N Y 2d 961). It might even be said that since this zoning change encompassed an area mapped out as a proposed street, it would be considered a positive dereliction of duty for the city to enact legislation enhancing the value of land it would shortly acquire for public purposes without in some way requiring that the city’s interests be protected. Finally, on basic equitable principles this claimant should not be permitted to reap the benefit of a zoning change which enabled the construction of its bowling alley and then avoid the burden of an agreement voluntarily assumed which could very well have been the word or deed relied upon by the city in changing its position to its injury by enactment of the zoning change. Therefore, in accordance with the agreement of claimant’s predecessor in title, Damage Parcel 5 is valued as residentially zoned without increment for nonconforming use.
The claimant also argues that under the so-called Fourth Avenue rule (Matter of City of N. Y. [Fourth Ave.], 247 *1080 N. Y. 569, 255 N. Y. 25) the court must find an average square-foot value for the entire tract and apply this average unit to the portion taken. The Fourth Avenue cases involved a situation in which a 20-foot strip was taken for street widening purposes from the most valuable frontage of an entire square block in one ownership. It was held that in such case the proper measure of damages is the difference between the fair market value of the whole before the taking and the fair market value of the remainder after the taking. This is to be arrived at by dividing the entire block into imaginary city lots to produce the best possible price for the entire tract, giving these lots separate valuations and adding proper increments. The total value thus arrived at is then divided by the number of square feet in the tract to give an average unit square foot value. Multiplying this average unit by the number of square feet in the area left after the taking gives the value of the remainder. The difference is the fair market value of the portion taken. The same result is reached by multiplying the number of square feet taken by the average unit square-foot value. The Court of Appeals held it to be error to value the strip taken as if it were part of a full 100-foot lot fronting on the street from which taken and awarding 20% or 25% of the value of such full lot as the value of the portion acquired. This is error because the owner in such case is not left with an 80-foot lot. He still has a full lot on his most valuable frontage simply by reducing the rearage of his remaining lots.
The Fourth Avenue rule, while undoubtedly effecting a realistic and fair result under the facts in that case, is inapplicable to the very different and special situation presented here for the following reasons: (a) this property was improved as a unit and was therefore not capable of subdivision; (b) this property only had three street frontages; (e) the portion taken is deemed to be zoned differently than the remainder of the tract for purposes of valuation; (d) the portion taken is in the bed of a proposed street and could not be utilized for the same purposes as the remainder of the tract.
The application of the Fourth Avenue rule in this case would result in a most unrealistic and disproportionate valuation of the strip taken (Matter of County of Nassau [McNeil Ave.], 238 App. Div. 863; St. Albans Land Corp. v. State of New York, 254 App. Div. 395).
The court further finds that the claimant’s appraisal submitted in rebuttal erroneously applies a Hoffman-Neil short-lot factor. Short-lot rules and the factors applied thereunder are based on the principle that the front- portion of a lot is worth *1081 more than the rearage. The principle is inapplicable in this ease for two reasons. First, the claimant still has frontage on Rosedale Avenue except that it will now be a widened and improved street. Second, the fact of the matter is that the 30 feet comprising this frontage actually had less value than the entire remainder of the claimant’s ownership.
For all of the foregoing reasons the court adopts the method of appraisal used by the city’s expert and fixes the basic square-foot unit for Damage Parcel 5 at $1.35. Accordingly an award is made for Damage Parcel 5 in a sum rounded out to $20,000.
The Corporation Counsel is directed to prepare and submit the tentative decree.