STATE EX REL. ZUPANCIC, Respondent, v. SCHIMENZ, Inspector of Buildings of city of Milwaukee, and another, Appellants: SAMPSON ENTERPRISES, INC., Defendant.

No. 51. Argued January 5, 1970.—Decided March 3, 1970.
(Also reported in 174 N. W. 2d 533.)

For the appellants there were briefs by *John J. Fleming,* city attorney, and *Wallace E. Zdun,* assistant city attorney, attorneys, and *John F. Cook,* assistant city attorney, of counsel, and oral argument by *Mr. Zdun.*

For the respondent there was a brief by *Peregrine, Schimenz, Marcuvitz & Cameron* and *Hugh R. Braun,* all of Milwaukee, and oral argument by *Mr. Braun.*

HALLOWS, C. J.   The basic issue before the trial court and on this appeal is whether a declaration of restrictions limiting the use of the land involved was a part of a contract to rezone the property and therefore was invalid.

On May 11, 1955, the common council of the city of Milwaukee approved a plat of the River Bend Shopping Center and provided that any future division of the lots would be subject to its approval. Part of this area was zoned "neighborhood shopping" and part "local business." In 1961 the shopping-center developers desired a change of zoning from neighborhood shopping to local business for a parcel of land 210 by 200 feet in order to sell it for use as a bowling alley. The request for zoning was referred to the city plan commission of Milwaukee which held hearings thereon. The homeowners to the south of this area were opposed to the change in zoning but not to a bowling alley. When these objections developed, the matter was laid over pending negotiations between the homeowners and the developers.

Out of these negotiations arose an agreement that the developers would limit the use to a bowling alley of the land to be rezoned. A declaration of restrictions was

drafted which provided that although the parcel was zoned local business, the only local business use permitted "shall be a bowling alley enterprise housed in a building not to exceed 42,000 square feet in area and to include a restaurant and cocktail lounge." Any other use of the land was limited to uses permitted under the then neighborhood-shopping zoning. The declaration also provided a buffer planting strip, certain structural requirements, the placement of air-conditioning equipment, and a fence to prevent pedestrian access to the shopping center from Honey Creek Drive on the south. The declaration stated the restrictions were for the benefit of the city of Milwaukee, were to be enforced by the city by injunction, were to run with the land, and were binding until January 1, 1982, a period of about twenty years.

At the meeting before the city plan commission, the attorney for neighbors expressing concern about the validity of the restrictions asked that the declaration be submitted to the city attorney for his opinion. And, at the conclusion of the meeting, the city plan commission recommended the passage of the rezoning ordinance which changed the zoning from neighborhood shopping to local business. Two days later the declaration of restrictions was executed and on the following day the staff report of the commission recommending passage was sent to the committee on streets zoning of the common council. On August 2d the declaration of restrictions was recorded and one week later on August 9th the rezoning ordinance became effective.

A few weeks later on August 27th the common council by resolution divided a platted lot to create the desired parcel for the bowling alley. The resolution provided that compliance with the restrictions was a condition of the division which created from the rezoned 210-by-200-foot area the parcel sold for the bowling alley and a surplus parcel of land approximately 190 feet north and south and 42 feet wide east and west. This smaller piece rezoned local business and restricted by the declaration

became, with the land to the west zoned neighborhood shopping, Parcel G which had a frontage on the north of 107 odd feet and a depth varying from 175 to 190 feet to the south.

On January 1, 1968, the respondent and two others made an offer to purchase Parcel G which offer was accepted. The sale was conditioned upon the respondent's obtaining a permit to build a car wash on the east 42 feet of Parcel G zoned local business which permitted a car wash. The offer to purchase was subject to deed restrictions of record. At the time, however, the respondent did not know of the deed restriction which would not permit a car wash; and seller did not remember it.

On February 2, 1968, the respondent applied to the appellant building inspector for a building permit to use the east 42 feet of Parcel G for a car wash and on February 21st the permit was issued. Two days later the respondent entered into a $66,000 contract to buy car-wash equipment and made a down payment of $20,000. About a week later on March 4th the building permit was revoked because the alderman of the ward wanted the common council to restudy the zoning of this small piece of land. On October 18, 1968, the common council rezoned the east 42 feet of Parcel G from local business back to neighborhood shopping upon the recommendation of the city plan commission. On November 27, 1968, the petition for a writ of mandamus in the circuit court was filed.

The city argues the declaration of restrictions is valid because: (1) It is not an incident of a contract for zoning or a condition of rezoning, and (2) this type of contract relating to zoning is not illegal as a matter of law. The city urges that for a declaration of restrictions to be an incident of zoning the municipal body which passes the zoning ordinance must be a party to the contract to zone and here the common council of Milwaukee only acted upon the recommendations of the planning

commission. Zupancic argues the declaration is part of an illegal zoning contract and if valid, the city waived its rights to enforce the restriction.

A contract made by a zoning authority to zone or rezone or not to zone is illegal and the ordinance is void because a municipality may not surrender its governmental powers and functions or thus inhibit the exercise of its police or legislative powers. 62 C. J. S., *Municipal Corporations*, p. 281, sec. 139; *Baylis v. City of Baltimore* (1959), 219 Md. 164, 148 Atl. 2d 429; *Midtown Properties, Inc. v. Township of Madison* (1961), 68 N. J. Super. 197, 172 Atl. 2d 40, affirmed (1963), 78 N. J. Super. 471, 189 Atl. 2d 226. *See also* Trager, *Contract Zoning*, 23 Md. L. Rev. (1963), 121; Comment, *The Use and Abuse of Contract Zoning*, 12 UCLA L. Rev. (1965), 897. In *Houston Petroleum Co. v. Automotive Products Credit Asso.* (1952), 9 N. J. 122, 87 Atl. 2d 319, the owner made an agreement with the city to restrict the use of his land if the city rezoned it so long as the rezoning was effective. The court held the agreement void because it violated public policy. In *Baylis* the court held an ordinance invalid which rezoned a parcel from residential to commercial use on the condition the agreement between the owner and the city restricting the parcel to a funeral-home use was executed and recorded so as to run with the land. Contract zoning is illegal not because of the result but because of the method.

In the instant case, there is no agreement with the city. Neither its common council nor the city plan commission agreed to rezone. The facts give rise to an agreement only between the developers and the homeowners respecting the use of the property if it was rezoned by the city. The rezoning per se did not require the conditions demanded by the homeowners. True, the developers and the homeowners expected favorable action by the city plan commission but this was based on two factors: (1) No objection to the rezoning under the circumstances by the

homeowners, and (2) the proposed rezoning was good land use and consistent with the developing character of the neighborhood.

When a zoning authority does not make an agreement to zone but is motivated to zone by agreements as to use of the land made by others or by voluntary restrictions running with the land although suggested by the authority, the zoning ordinance in some jurisdictions is valid and not considered to be contract or conditional zoning. The leading case for this view is *Church v. Town of Islip* (1960), 8 N. Y. 2d 254, 168 N. E. 2d 680, 203 N. Y. Supp. 2d 866. While this case has been criticized, it has in its home state been followed and expanded. *Point Lookout Civic Asso. v. Town of Hempstead* (1960), 12 App. Div. 2d 505, 207 N. Y. Supp. 2d 121; *Longdowd Corp. v. Straight Improvement Co.* (1963), 39 Misc. 2d 1005, 242 N. Y. Supp. 2d 260; *Matter of City of New York (Rosedale Avenue)* (1963), 40 Misc. 2d 1076, 243 N. Y. Supp. 2d 814; *see also Walus v. Millington* (1966), 49 Misc. 2d 104, 266 N. Y. Supp. 2d 833.

The virtue of allowing private agreements to underlie zoning is the flexibility and control of the development given to a municipality to meet the ever-increasing demands for rezoning in a rapidly changing area. A quite similar case sustaining the validity of such zoning is *Sylvania Electric Products, Inc. v. City of Newton* (1962), 344 Mass. 428, 183 N. E. 2d 118, wherein the court although recognizing the close connection existed between voluntarily imposed restrictions and a rezoning ordinance held the rezoning was a legislative act without conditions and valid.

The instant facts find almost their counterpart in *Bucholz v. City of Omaha* (1963), 174 Neb. 862, 120 N. W. 2d 270. The city of Omaha rezoned land from residential use to a commercial use so the owner could develop a shopping center. After the rezoning, the city approved a protective covenant limiting the use to which

the property could be put. This agreement was sustained although the court intimated it was willing to strike down contract zoning when the evidence showed a bargain between the applicants and the city. In the view of the court the rezoning was not the result of an agreement but of assurances on the part of the landowner that he would restrict his land use if the property were rezoned. In Maryland a valid distinction is made between cases where the contract is made between the developer and the zoning authority and cases where the contract is made between the developer and a city plan committee or a body which recommends zoning but does not have the authority to zone. *City of Greenbelt v. Bresler* (1967), 248 Md. 210, 236 Atl. 2d 1; *Pressman v. City of Baltimore* (1960), 222 Md. 330, 160 Atl. 2d 379; *Town of Somerset v. County Council for Montgomery County* (1962), 229 Md. 42, 181 Atl. 2d 671.

We hold that when a city itself makes an agreement with a landowner to rezone the contract is invalid; this is contract zoning. However, when the agreement is made by others than the city to conform the property in a way or manner which makes it acceptable for the requested rezoning and the city is not committed to rezone, it is not contract zoning in the true sense and does not vitiate the zoning if it is otherwise valid. This latter situation is sometimes confused with conditional zoning. But conditional zoning properly understood involves only an adopted zoning ordinance which provides either: (1) The rezoning becomes effective immediately with an automatic repealer if specified conditions are not met within a set time limit, or (2) the zoning becomes effective only upon the conditions being met within the time limit. *See* Schaffer, Vol. 11, The Practical Lawyer, No. 5, p. 43, *Contract and Conditional Rezoning;* 5 McQuillin, *Municipal Corporations,* p. 127, sec. 15.41.

But *see* 1 Anderson, *American Law of Zoning* (1968), pp. 610–620, secs. 8.20, 8.21.

Some courts take the view advanced by Zupancic that the facts in the instant case give rise to a *quid pro quo* for rezoning although no express contract with the zoning authorities can be proved. This "implied contract" arises from the fact the connection between rezoning and the recording of restrictions at or soon after the rezoning which condition the lands for rezoning and motivate the enacting authorities is sufficient to render the rezoning and contract illegal. This view rests on a "but for" theory of a bargain.

Rathkopf, in his work on zoning and planning, states:

"Most courts take a practical view of such situation and hold that the execution and filing of such assumption of additional restrictions were a *quid pro quo* for the rezoning, *i.e.,* zoning by contract. The general rule in these jurisdictions in which the validity of such covenants has been litigated is that they are illegal. The basis of such rule is that the rezoning of a particular parcel of land upon conditions not imposed by the zoning ordinance generally is the particular district into which the land has been rezoned is prima facie evidence of 'spot zoning' in its most maleficent aspect, is not in accordance with a comprehensive plan and is beyond the power of the municipality.

"Legislative bodies must rezone in accordance with a comprehensive plan, and in amending the ordinance so as to confer upon a particular parcel a particular district designation, it may not curtail or limit the uses and structures placed or to be placed upon the lands so rezoned differently from those permitted upon other lands in the same district. Consequently, where there has been a concatinated rezoning and filing of a 'declaration of restrictions' the general view (where the question has been litigated) is that both the zoning amendment and the restrictive covenant are invalid for the reasons expressed above." 3 Rathkopf, *The Law of Zoning and Planning* (3d ed.), Ch. 74–9, *Deed Covenants and Restrictions—Effect of Zoning Ordinance.*

.

While this view of invalidity is taken by the courts in New Jersey,[1] Maryland,[2] Michigan,[3] and Florida,[4] we think this is a too rigid view. At the other extreme we find *State ex rel. Myhre v. City of Spokane* (1967), 70 Wash. 2d 207, 216, 422 Pac. 2d 790, 796, taking the view "a zoning ordinance and a concomitant agreement should be declared invalid only if it can be shown there was no valid reason for a change and that they are clearly arbitrary and unreasonable, and have no substantial relation to public health, safety, morals and general welfare, or if the city is using the concomitant agreement for bargaining and sale to the highest bidder or solely for the benefit of private speculators." *See also Hudson Oil Co. of Missouri v. City of Wichita* (1964), 193 Kan. 623, 396 Pac. 2d 271.

We think landowners may make a contract which may legitimately be recognized by the zoning authorities as a motivation for rezoning but such zoning must meet the test of all valid zoning, *i.e.*, must be for the safety, welfare, health of the community, sec. 62.23 (7), Stats., and it should not constitute spot zoning. Spot zoning per se is not illegal and we do not consider the rezoning in this case to be illegal spot zoning because it was in the public interest and not solely for the benefit of the developer. *See Boerschinger v. Elkay Enterprises, Inc.* (1966), 32 Wis. 2d 168, 145 N. W. 2d 108; *Cushman v. Racine* (1968), 39 Wis. 2d 303, 159 N. W. 2d 67. Besides, spot zoning is usually understood to be zoning "by which a small area situated in a larger zone is purportedly devoted to a use inconsistent with the use to which the larger area is restricted." *Higbee v. Chicago, B. & Q. R. R.* (1940), 235 Wis. 91, 292

---

[1] *Houston Petroleum Co. v. Automotive Products Credit Asso. Inc.* (1952), 9 N. J. 122, 87 Atl. 2d 319.

[2] *Baylis v. City of Baltimore* (1959), 219 Md. 164, 148 Atl. 2d 429.

[3] *Sandenburgh v. Michigamme Oil Co.* (1930), 249 Mich. 372, 228 N. W. 707.

[4] *Hartnett v. Austin* (Fla. 1956), 93 So. 2d 86.

N. W. 320. The record does not show how the shopping-center area is zoned except that part is neighborhood shopping and part local business. Without proof we cannot say a bowling alley-restaurant-cocktail lounge complex is inconsistent with a Red Owl Store, a gas filling station, and a Marc's Big Boy Restaurant in the shopping center.

Zupancic's argument that the zoning violates sec. 62.23 (7) (b), Stats., is also without merit. This section does not require a district of any minimum size. The uniformity provision does not require absolute uniformity with other similar districts but only uniformity within each district. This requires reasonable uniformity, not identical similarity.

In recognizing the legality of what was done here, we caution that the procedure might well lead to an agreement with the zoning authority which might be fatal. We do not consider the declaration of restrictions, which only the city can enforce, makes the city a party to the contract; at most, the city is a third-party beneficiary protecting the public interest. Where the imposition of conditions on land development is desirable, it might better be done by uniform ordinances providing for special uses, special exceptions and overlaid districts. As stated in Cutler, *Zoning Law and Practice in Wisconsin*, p. 27, sec. 8: "Conditions imposed in such cases . . . have a sounder legal basis because guidelines for their imposition are spelled out in the ordinance."

The instant case is not in effect much different than the cases of gasoline filling stations where the ordinance requires special permission for a permit to be granted upon the meeting of certain standards established by a licensing or permit agency. *See J & N Corp. v. Green Bay* (1965), 28 Wis. 2d 583, 137 N. W. 2d 434. This technique of authorizing in the zoning ordinance the plan commission or governing body to grant "special uses and conditional uses" on definite standards from the automatic permissive uses listed in the zoning ordinance

is preferable to the method used in the instant case. The boundary areas of zones generally present problems. The technique used in the instant case is an attempt to soften or taper the periphery between differing automatic uses. Flexibility might also be attained by the use of floating zones or overlay districts in zoning ordinances. *See* Cutler, *supra;* Anderson, *supra,* secs. 5.14–5.16; *also State ex rel. American Oil Co. v. Bessent* (1965), 27 Wis. 2d 537, 135 N. W. 2d 317.

Zupancic argues the city has waived its right to enforce the restrictions on the use of the parcel because it granted a building permit and he has changed his position relying thereon. At the time the permit was granted the deed restrictions prohibited Zupancic from building a car wash. These restrictions were not waived by the building inspector's granting a building permit in the first instance. The inspector had no authority or intention to waive enforcement of restrictions to confine the use to a bowling alley or uses permitted by neighborhood shopping for twenty years.

It is claimed the building inspector should have known and he had constructive knowledge of the deed restrictions; but it is likewise true that the respondent should have known and had constructive knowledge of the deed restrictions. His purchase of the land was subject to recorded restrictions. *Bump v. Dahl* (1965), 26 Wis. 2d 607, 133 N. W. 2d 295, 134 N. W. 2d 665. Zupancic was no more misled by the building inspector's action than by his own ignorance and negligence in not ascertaining what restrictions were on the land. He has made no improvements on the land and is not obligated to go through with the purchase if a building permit is denied him. It is true he made a $20,000 down payment on equipment but we do not think under the circumstances that calls for the issuance of the building permit.

*By the Court.*—Judgment reversed, with directions to deny the peremptory writ and grant an injunction enjoining Zupancic from constructing any building in violation of the terms of the declaration of restrictions.