MASSEY v. CITY OF CHARLOTTE, 2000 NCBC 5

**STATE OF NORTH CAROLINA**

**COUNTY OF MECKLENBURG**

**IN THE GENERAL COURT OF JUSTICE**
**SUPERIOR COURT DIVISION**
**99-CVS-18764**

BETHANIE C. MASSEY, et al.

**Plaintiffs**

**v.**

CITY OF CHARLOTTE AND
ALBEMARLE LAND COMPANY, LLC

**Defendants.**

**ORDER, OPINION**
**AND JUDGMENT**

{1}    This matter is before the Court on Respondent City of Charlotte's Motion to Dismiss Petition for Writ of Certiorari.  This Court has received and reviewed Petitioners' brief in support of petition, Respondent's brief in support of its motion to dismiss, and Petitioners' reply, and oral arguments were heard.  At issue is whether the City of Charlotte may rezone a specific tract to a conditional use district with specific use limitations without issuing a conditional use permit and without the decision being subject to review on writ of certiorari.  For the reasons explained below, the Court finds that the City of Charlotte's decision is subject to review, and therefore the motion to dismiss the writ of certiorari is DENIED.  Since the City of Charlotte concedes that it failed to comply with the procedural requirements of a quasi-judicial process, Judgment is entered for the Petitioners.

*Hewson Lapinel Owens, P.A., by H.L. Owens, for Petitioners Bethanie C. Massey, et al.*

*Robert E. Hagemann, for Respondent City of Charlotte.*

*Robinson Bradshaw & Hinson, P.A., by Frank E. Emory, Jr., for Respondent Albemarle Land Company, LLC.*

**I.**

{2}    In June of 1999, Albemarle Land Company, LLC ("Albemarle") filed a petition seeking to rezone approximately 42 acres from R-3 (Residential) to CC (Commercial  Center).   Upon approval of its petition, Albemarle intended to develop a retail center which would house two "big box" retailers (a

Target and a Lowes Home Improvement Warehouse) and five out-parcels. The schematic plan submitted with the application provided for a 100-foot buffer strip between the development and the neighboring property owners. The neighboring landowners filed a written petition opposing the application. The Charlotte City Council held a public hearing on the petition in October, 1999, and on November 15, 1999, the City Council approved the application by a 6 to 5 vote.

{3}     On December 15, 1999, neighboring landowners filed a petition for writ of certiorari pursuant to N.C.G.S. § 160A-381(c) and Rule 19. Upon the motion of Senior Resident Superior Court Judge Shirley Fulton, this case was designated by the Chief Justice as a "complex business" case and assigned to the undersigned pursuant to Rule 2.1. The case raises significant questions concerning how and when zoning authorities may employ conditional use zoning. Those questions are of particular interest to the metropolitan areas of this state experiencing rapid growth and change.

## II.

{4}     Petitioners seek review of the Charlotte City Council's ("City Council") decision to issue a conditional use permit to Albemarle. Respondents maintain that the zoning decision, which included the issuance of a conditional use permit the City maintains was a nullity, was a purely legislative decision, and therefore not subject to review on writ of certiorari. In fact, respondents acknowledge that if the Court finds that the zoning decision is reviewable on certiorari, it will have to concede that the underlying decision was unlawful because it did not satisfy the legal requirements for quasi-judicial zoning decisions.[fn1]  In fact, the City does not have a quasi-judicial record that could be transmitted to the Court for review. Before addressing the question of whether the City's zoning decision is subject to judicial review, it is helpful to have a clear understanding of the various types of zoning and their legal viability.

## A.

{5}     Zoning decisions often put property owners, neighboring landowners and governing bodies at odds with one another. Frequently, landowners applying for a rezoning of their property will submit a proposal which, either explicitly or implicitly, promises to develop the property in a specific way. City council members and neighboring landowners often feel betrayed when such promises are not kept. As a result, lawmakers have developed several methods of zoning which attempt to hold landowners to their promises. However, few of these methods have found favor in the courts.

{6}     One such method of enforcing compliance with zoning decisions based upon the representations of landowners is contract zoning. Pure contract zoning occurs when there is an actual written contract

between the applicant and the governing board. In such a contract, the governing board promises to rezone the property, and the landowner promises to develop the property in a specific way. A majority of courts have found contract zoning invalid based on the fact that no local government can contract away its police power; therefore, such a contract between an landowner and a governing board lacks consideration and is not enforceable. *See Hall v. City of Durham*, 323 N.C. 293, 298, 372 S.E.2d 564, 568 (1988)*; Chrismon v. Guilford County*, 322 N.C. 611, 635, 370 S.E.2d 579, 593 (1988); *Dacy v. Village of Ruidoso,* 845 P.2d 793, 797 (N.M. 1992); *State ex rel. Zupancic v. Schimenz*, 174 N.W.2d 533, 537 (Wisc. 1970).

{7}     Although this pure form of contract zoning has never been contested in North Carolina, the North Carolina Supreme Court has found contract zoning to exist where there was no written or oral contract between the landowner and the city council. In *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E.2d 432, (1971), the landowner filed a petition seeking a rezoning of his property from R-4 to R-10, thereby allowing him to construct a luxury apartment complex. There was no formal agreement between the petitioner and the city council; the petitioner simply displayed drawings of the proposed complex as a part of his request. *Id.* at 545, 178 S.E.2d at 440. The court found that the city council's reliance upon the petitioner's proposal, and thus its failure to consider all uses permissible in an R-10 district, amounted to unlawful contract zoning. *Id.* at 544-45, 178 S.E.2d at 440. Similarly, in *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E.2d 35 (1972), plaintiffs brought an action challenging the city council's decision to rezone a piece of property from R-4 to R-6, which would allow the owner to build an apartment complex upon the property. The court found that the city council's decision constituted unlawful contract zoning because it was adopted in exclusive reliance upon the applicant's representations as to the specific use that would be made of the property. *Id.* at 540, 187 S.E.2d at 46. In so finding, the court relied on the following language from *Allred*:

> Rezoning on consideration of assurances that a particular tract or parcel will be developed in accordance with restricted approved plans is not a permissible ground for placing the property in a zone where restrictions of the nature prescribed are not otherwise required or contemplated. Rezoning must be effected by the exercise of legislative power rather than by special arrangements with the owner of a particular tract or parcel of land.

*Blades*, 280 N.C. at 550, 187 S.E.2d at 46, citing *Allred v. City of Raleigh*, 277 N.C. at 545, 178 S.E.2d at 440-41. *Allred* and *Blades* make it clear that contract zoning is illegal in North Carolina. Thus, a city council may not consider a landowner's proposed specific use of the property when deciding whether to rezone a parcel.

{8}     Other types of rezoning aimed at holding property owners to their promises are single purpose (or single use) zoning and spot zoning.  Single purpose zoning occurs where the city council creates a district in which the only permitted use is the use proposed (or promised) by the applicant. *See* Stephen E. Davenport & Philip P. Green, Jr., *Special Use and Conditional Use Districts:  A Way to Impose More Specific Zoning Controls* 5 (Institute of Government 1980) [hereinafter *Special Use and Conditional Use Districts*].  Spot zoning is single purpose zoning applied to a small tract in single ownership.  *Id.*  These types of zoning are contrary to the principle announced in *Helms v. City of Charlotte*, 225 N.C. 647, 122 S.E.2d 817 (1961).  In *Helms*, the Supreme Court found that a zoning ordinance cannot deprive a property owner of all practical use and reasonable value of his land.  *Id.* at 653, 122 S.E.2d at 822.  Therefore, the city council may not limit a property owner to a specific use by way of a zoning classification.  Furthermore, in *Blades v. City of Raleigh*, and *Stutts v. Swaim*, 30 N.C. App. 611, 228 S.E.2d 750 (1976), the North Carolina courts expressly invalidated two spot zoning amendments.  The *Blades* and *Stutts* courts found that the city improperly amended the zoning ordinance to relieve a small tract of land from restrictions to which the rest of the area was subjected.  While spot zoning is not per se unlawful in North Carolina, the courts have clearly found it invalid in "the absence of a clear showing of reasonable basis."  *Blades*, 280 N.C. at 549, 187 S.E.2d at 45; *Stutts*, 30 N.C. App. at 615, 228 S.E.2d at 752.

{9}     A fourth method of ensuring property is put to its promised use is conditional zoning.  Conditional zoning occurs when the ordinance that amends the zoning of a parcel of land includes conditions on its manner of development.  Thus, the conditions are a part of the zoning classification, and failure to develop the property in accordance with the conditions is a violation of the zoning ordinance.  Courts in several states have approved systems of conditional zoning.  *See Cross v. Hall County*, 238 Ga. 709, 235 S.E.2d 379 (1977); *Bucholz v. City of Omaha*, 174 Neb. 862, 120 N.W.2d 270 (1963); *Church v. Town of Islip*, 168 N.E.2d 680 (N.Y. 1960); *State ex rel. Myhre v. City of Spokane*, 70 Wash. 2d 207, 422 P.2d 790 (1967); *State* ex rel. *Zupancic v. Schimenz*, 46 Wis. 22, 174 N.W.2d 533 (1970).  In approving conditional zoning, courts often emphasize that the property was suited for all permissible uses within the district, but conditions were imposed for the benefit of neighboring landowners. *See Church v. Town of Islip*, 168 N.E.2d at 683.  Thus, the courts are reluctant to allow neighbors to overturn zoning decisions on the basis of illegal conditions when the conditions were imposed on behalf of the neighbors.  *See id.*  However, in North Carolina, applying conditions on a rezoning is not enforceable.  In *Decker v. Coleman*, 6 N.C. App. 102, 187 S.E.2d 35 (1972), neighboring landowners sought a court order requiring a developer to comply with the conditions applied to the property.  The

North Carolina Court of Appeals found the conditions unenforceable because they applied to only one property within the district. The court held that conditional zoning, which applies unique conditions to the development of the applicant's property, is contrary to the zoning enabling act, which requires that zoning regulations be uniform with respect to all properties within a particular kind of district.

{10}    Thus, historically the North Carolina courts have declined to enforce zoning conditions when imposed upon property owners in the form of contract zoning, single purpose zoning, spot zoning or conditional zoning. This hesitancy to allow zoning conditions has limited zoning authorities' ability to ensure that a landowner will only make certain uses of the property, and it has hindered development in large metropolitan areas.

**B.**

{11}    Although the North Carolina courts have invalidated most methods of zoning which require a landowner to develop his property in accordance with specific conditions or subject to certain limitations, the courts have not rejected all forms of property-specific regulation. For example, the courts have approved individualized, site-specific, restrictions imposed as conditions on the grant of a special use or conditional use permit. *See Convent of the Sisters of St. Joseph of Chestnut Hill v. Winston-Salem*, 243 N.C. 316, 90 S.E.2d 879 (1956); *Kenan v. Bd. of Adjustment*, 13 N.C. App. 688, 187 S.E.2d 496 (1972). Zoning ordinances which allow for the issuance of special use permits provide for certain uses of right within a district, but prohibit a specific use, except upon the grant of a special use permit. In addition, the courts have approved the use of "floating districts," which are districts that are defined in the text of the ordinance but are applied or mapped only upon petition of landowners and only under circumstances set forth in the ordinance. *See* David W. Owens, *Legislative Zoning Decisions: Legal Aspects* 9 (Institute of Gov't, 2d ed. 1999) [hereinafter *Legislative Zoning Decisions*]. Ordinances which allow for special use permits and floating districts provide two methods of limiting property owners to certain uses.

{12}    In 1980, Stephen E. Davenport and Philip P. Green developed a system of zoning which combined the two approaches of special use permits and floating districts. Conditional use district zoning provides a means by which an applicant for a zoning amendment can be held to his promises without violating principles against contract and conditional zoning. *Special Use and Conditional Use Districts* at 6-7. A city wishing to adopt a conditional use district system amends its zoning ordinance to provide an entirely new set of districts. *Id.* at 7. These new districts duplicate the existing set of districts, except that they are denominated "special use" or "conditional use" districts. *Id.* Each new

district is a "floating zone" because no land is mapped as being such a district until its owner requests this designation. *Id.* The difference between a conditional use district and its counterpart general district is that there are no uses of right within a conditional use district. *Id.* Nothing can be done with the land in a conditional use district without a conditional use permit. *Id.* Thus, after making its decision to rezone the property to a conditional use district, the governing board will consider the property owner's individual application for a conditional use permit. *Legislative Zoning Decisions* at 94. This approach avoids the problem of conditioning the *rezoning* decision upon certain representations of the applicant. After the property is rezoned, the governing body may consider which uses are appropriate for the parcel in question. Furthermore, if a property owner wishes to change his plans, he must apply for a new conditional use permit, thus giving the city council the opportunity to consider whether other uses are permissible. *Special Use and Conditional Use Districts* at 8. This system obviates the need for the city council to consider all permissible uses within a district, thus avoiding the concerns of the *Allred* and *Blades* courts.

{13} Thus, in a municipality where the zoning ordinance provides for conditional use districts, anyone who petitions for a zoning amendment has two choices: (1) apply for rezoning to a general use district, in which case the board may not base its action on specific plans; or (2) request rezoning to a conditional use district.

### III.

{14} Conditional use district zoning was first implemented by the City of Greensboro in 1972. *Legislative Zoning Decisions* at 94. In 1985, the General Assembly amended the general zoning-enabling act, to provide for conditional use zoning. *See* N.C.G.S. §§ 106A-381, 382 (1999). The current language of the statute reads:

> [Zoning] districts may include, but shall not be limited to, general use districts, in which a variety of uses are permissible in accordance with general standards; overlay districts, in which additional requirements are imposed on certain properties within one or more underlying general or special use districts; *and special use districts or conditional use districts, in which uses are permitted only upon the issuance of a special use permit or a conditional use permit.*

N.C.G.S. § 160A-382 (emphasis added).

{15} In this case, the City acknowledges that it is acting pursuant to the power granted under N.C.G.S. § 160A-382. While the City issued a "Conditional Use Permit" to Albemarle upon the decision to rezone the property to conditional use district CC, the City claims that the permit is superfluous. The permit included provisions one would normally expect to find in a conditional use permit.

Furthermore, the City argues that it was not required to issue a conditional use permit in this case, but rather had the authority under N.C.G.S. §§ 160A-381, 382 to utilize an entirely legislative process. Thus, this Court must first determine what procedure is required under the statute.

{16}    The general-enabling act speaks specifically to the types of zoning authorized by the statute and to the procedures which must be followed in making zoning decisions. As stated above, the statute authorizes general use districts, overlay districts, and conditional use districts. Furthermore, the statute is specific as to the procedure to be followed when rezoning a property to a conditional use district. The statute provides:

> [City zoning] regulations may provide that . . . the board of adjustment or the city council may issue special use permits or conditional use permits in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits.
>
> . . . .
>
> When issuing or denying special use permits or conditional use permits, the city council shall follow the procedures for boards of adjustment except that no vote greater than a majority vote shall be required for the city council to issue such permits, and every such decision of the city council shall be subject to review by the superior court by proceedings in the nature of certiorari.

N.C.G.S. § 160A-381(a),(c)(1999). The "procedures for boards of adjustment" are outlined in N.C.G.S. § 160A-388. The procedures are quasi-judicial in nature and include notice and a hearing at which witnesses may be compelled to testify. N.C.G.S. § 160A-388(g) (1999).

{17}    The legislation which amended the general-enabling act to provide for conditional use district zoning was drafted by Stephen E. Davenport. Prior to the enactment of the legislation, Mr. Davenport along with his colleague Philip P. Green, Jr. published a pamphlet that explained conditional use district zoning and addressed the legal issues involved with such a system. *See Special Use and Conditional Use Districts*. This pamphlet provides insight to the intent behind the statutory amendment.

{18}    Under a section of the pamphlet entitled "Legal Pitfalls to Avoid," Davenport and Green explain that the decision to rezone a property to a conditional use district is legislative in nature. Thus, when rezoning land to a conditional use district, the governing body must follow the same requirements that apply to any zoning amendment. It must (1) give notice and hold a hearing, (2) hear recommendations from its planning committee and (3) receive protests from neighboring property owners. *Id.* at 11-12. However, the danger inherent in conditional use district zoning is that the decision-making body will create a district in which only the uses proposed by the applicant are permitted and rezone the property

according to such conditions. Consequently, there is a need for a procedural safeguard which protects against illegal spot zoning or contract zoning. The safeguard developed by Davenport and Green is the conditional use permit.

{19}    Davenport and Green emphasize that the zoning ordinance which provides for conditional use zoning must contain adequate standards to govern issuance or denial of conditional use permits. *Id.* at 11-12. Specifically, "procedures for issuance of [conditional] use permits must afford constitutional 'due process' – notice, opportunity to be heard, opportunity to confront opposing witnesses, etc." *Id.* at 12. In addition, "decisions must be based on competent, material, and substantial evidence that *establishes the existence or nonexistence of the facts* that the ordinance requires for issuance of the permit." *Id.* (emphasis added). Therefore, the issuance of a conditional use permit involves a quasi-judicial determination. "The legal advantage of such a system is that the legislative rezoning decision is not technically based on a single project, thereby avoiding the problem [of contract zoning] in *Allred* and *Blades*. In addition, the individual conditional-use permit allows specific, enforceable conditions to be imposed on the project that is approved." *Legislative Zoning Decisions* at 94.

{20}    As discussed above, conditional use district zoning provides a method whereby a property owner may be subject to certain conditions following the rezoning of the property. If conditional use district zoning did not require the issuance of a conditional use permit, the decision to rezone would be based on the proposed use of the property. Such a system would amount to the type of contract zoning invalidated in *Allred* and *Blades*. In contrast, under a system of conditional use district zoning, the decision to rezone the property is made independently of any consideration of the proposed use of the property. Only after the property has been rezoned does the governing board entertain an application to use the property in a specific manner permissible for that particular conditional use district.

{21}    In order to comport with due process, the zoning authority must follow a two-step process. First, it must decide whether to rezone the property to a conditional use district, which is a legislative decision. Second, it must decide whether to issue a conditional use permit to the property owner, which is a quasi-judicial determination. There are various factors involved in zoning decisions. Some zoning decisions require an evaluation of various policy considerations (legislative), while others necessitate a fact finding process (quasi-judicial). For example, legislative decisions affect the entire community by setting general policies that are applicable throughout the zoning ordinance (i.e., decisions to adopt, amend, or repeal the zoning ordinance). *See Legislative Zoning Decisions* at 10. On the other hand, quasi-judicial determinations involve the application of zoning policies to

individual situations rather than the adoption of new policies. *See id.*, citing *Lee v. Board of Adjustment*, 226 N.C 107, 37 S.E.2d 128 (1946). "[Quasi-judicial] decisions involve two key elements: the finding of facts regarding the specific proposal and the exercise of some discretion in applying predetermined policies to the situation." *Id.* at 11. Thus, while "[t]he legislative decision is based on a consideration of the *policy* question of whether some limited alternative use is appropriate for the site," the quasi-judicial decision determines whether the particular application meets the standards set in the rezoning decision. *Id.* at 95.

## IV.

{22}   The City of Charlotte argues that it has implemented a purely legislative system of conditional use district zoning. The City relies on the history of its zoning code as evidence that it effectively eliminated the quasi-judicial aspects of conditional use district zoning. Furthermore, the City maintains that it has the authority to engage in a process of conditional use district zoning that is entirely legislative in nature. For purposes of this decision, the Court has accepted the City's positions that it eliminated all quasi-judicial aspects of conditional use zoning and that the issuance of the permit to Albemarle was superfluous and a nullity. For the reasons stated below, this Court finds that the City's purely legislative system is prohibited by statute and thus is invalid.

## A.

{23}   In 1973, the General Assembly passed legislation which permitted the City to "create special use districts in which a single use is permitted upon the issuance by the governing body of a special use permit prescribing the conditions under which such use will be permitted." 1973 N.C. Sess. Laws 1283.[fn2] As originally adopted, the ordinance establishing conditional district zoning required the City Council to make findings of fact when deciding on an application to rezone a district as a conditional use district. Accordingly, the process of conditional district rezoning was found by the courts to be a quasi-judicial process. As a result, the City amended its zoning code to eliminate the language requiring findings of fact, thereby intending to establish a purely legislative process. However, the code continued to call for the issuance of conditional use permits and such permits continued to be issued.

{24}   In 1991, the City adopted the current zoning code, which it contends does not require the issuance of a conditional use permit upon rezoning a property to a conditional use district. Instead, conditions are to be imposed through a legislative rezoning decision, and thus inhere in the zoning district itself. Therefore, the City argues that it has successfully eliminated any quasi-judicial aspect of zoning decisions. However, as will be discussed below, this argument fails for three reasons. First, to the

extent the City argues that conditional use district zoning does not require the issuance of a permit, there is no precedent approving such a process. Second, if the City is actually engaged in conditional zoning in a purely legislative process, such a system has been invalidated in North Carolina. Third, the statute upon which the City relies requires the issuance of a conditional use permit.

**B.**

{25}   The system of conditional use district zoning requires the governing authority to issue a conditional use permit, a decision that is quasi-judicial in nature. To argue otherwise overlooks both the plain language of the statute and the holding in *Chrismon v. Guilford County*, 322 N.C. 611, 370 S.E.2d 579.   As discussed above, the North Carolina legislature has authorized the implementation of conditional use district zoning pursuant to N.C.G.S. § 160A-382. The statute expressly provides that within conditional use districts "uses are permitted only upon the issuance of a . . . conditional use permit." The conditional use permit is necessary because there are no uses of right in a conditional use district. Furthermore, N.C.G.S. §§ 160A-381(c), 388(g) specifies the procedures to be followed when issuing a conditional use permit – procedures which are quasi-judicial in nature. To attempt to eliminate the quasi-judicial aspect of conditional use district zoning runs afoul of the grant of authority contained in N.C.G.S. § 160A-382.

{26}   In *Chrismon*, the North Carolina Supreme Court upheld Guilford County's system of conditional use district zoning. In so holding the Court recognized that "just as this type of zoning can provide much-needed and valuable flexibility to the planning efforts of local authorities, it could also easily be abused." 322 N.C. at 622, 370 S.E.2d at 586. Thus, the Court found it important to evaluate the procedures followed by the county. *Id*. at 638, 370 S.E.2d at 595. The county followed a two-step process: the landowner submitted two separate applications – one for rezoning to a conditional use district and one for a conditional use permit. *Id.*   The Court specifically found that "[t]he Guilford County Zoning Ordinance provides appropriate procedures to be used by landowners wishing to apply for rezoning to a conditional use district and for conditional use permits." *Id.* The *Chrismon* court did not consider a process which was entirely legislative. However, in light of the importance it placed on the county's procedures, it is clear that the quasi-judicial aspect of the zoning decision was central to the court's decision to uphold conditional use district zoning. *Chrismon* was decided after the enactment of N.C.G.S. § 160A-381, 382 authorizing conditional use district zoning, but the Greensboro zoning ordinance at issue was not enacted pursuant to N.C.G.S. § 160A-381, 382. The zoning ordinance in *Chrismon* predated that statute and was upheld under the predecessor statute, N.C.G.S. § 153A-340 (1981), which authorized local governments to "regulate and restrict the use of

land and to issue conditional use permits." *Id.* at 621, 370 S.E.2d at 587. Justice Meyer did note in the majority opinion that the Greensboro ordinance mirrored the newly enacted statute. *Id.* at 621-22, 370 S.E.2d at 586-87. Contrary to respondent's contentions, *Chrismon* does not provide support for approving a system of conditional use district zoning which eliminates the need for a conditional use permit and thus is entirely legislative.

{27} There are important policy reasons for requiring conditional use district zoning to include a quasi-judicial permitting process.[fn3] The permitting process is necessary to protect surrounding property owners. Respondent argues that property owners are sufficiently protected in a purely legislative system. Respondent points out that legislative zoning decisions are subject to a standard of judicial review which requires the decision to be "reasonable, neither arbitrary nor unduly discriminatory, and in the public interest." 322 N.C. at 622, 370 S.E.2d at 586. However, this Court finds that while a retrospective review of a legislative zoning decision under that standard may offer some protection, it does not adequately protect neighboring landowners who seek to prevent specific uses of adjacent property. In addition, respondent argues that property owners find some protection in the electoral process. This Court does not accept this argument – the protection at the ballot box comes too late and does not sufficiently protect an individual landowner from a rezoning decision made by council members outside her district which will affect the use and enjoyment of her property.

{28} The protection of neighboring property owners has always been a concern of the courts and the legislature. This is precisely why the legislature specifically provided for a quasi-judicial permitting process.

> [I]n the case of quasi-judicial zoning decisions, the focus shifts to the constitutional requirements imposed to ensure that predetermined public policies are fairly and reasonably applied to individual cases. "The courts are concerned that an impartial decision be made, based solely on legitimately acquired and considered evidence, a clear rationale for the decision, and an expeditious judicial review to guarantee that these required protections of individual rights have been observed."

*Legislative Zoning Decisions* at 11, quoting *Humble Oil & Refining Co. v. Board of Alderman*, 284 N.C. 458, 202 S.E.2d 129 (1974). Conditional use district zoning without a permitting process does not provide those protections.

{29} As previously discussed, conditional use district zoning has its benefits. It arose during a time when the larger metropolitan areas such as Charlotte, Raleigh, Durham, Greensboro and Winston-Salem were experiencing significant growth. Both old neighborhoods and undeveloped areas were subject to fast-paced change. Zoning authorities needed more flexibility. *See Chrismon*, 322 N.C. at

622, 370 S.E.2d at 586. The sheer number of zoning decisions existing in today's rapid growth areas makes the use of a quasi-judicial proceeding a burden on zoning authorities in those areas. However, the historical protections afforded to property owners are just as important, if not more so, in rapidly changing times as they were when growth was slower. No matter how burdensome to governmental authorities, the protection afforded individual property owners in a quasi-judicial process must be preserved.

## C.

{30}     The City's argument that it was not required to issue a conditional use permit in this case may be based on the position that the zoning ordinance implements a system of conditional zoning as opposed to conditional use district zoning. Indeed, there are aspects of the zoning ordinance that indicate that the City was operating under a system of conditional zoning. For example, Section 11.402 of the zoning ordinance lists thirty uses of right in a commercial center district (the conditional use district at the center of this case). However, under the method of conditional use district zoning as developed by Davenport and Green, and as authorized by statute, conditional use districts are, by definition, districts where there are no uses of right. The description of certain conditional districts, together with the legislative procedure implemented by the City indicates that the City is operating under a system of conditional zoning. To the extent the City argues that this case involves conditional district zoning, as opposed to conditional use district zoning, this Court finds this system of zoning is illegal under prior case law.

{31}     The City relies on the language of the North Carolina Supreme Court in *Chrismon v. Guilford County* in support of its argument that purely legislative conditional zoning is permissible in North Carolina. Indeed, the *Chrismon* court purported to join the "growing trend of jurisdictions in recognizing the validity of properly employed conditional use zoning." *Chrismon*, 322 N.C. at 621, 370 S.E.2d at 585. However, the court failed to properly distinguish between conditional use district zoning, which was at issue in *Chrismon*, and conditional zoning, which has been upheld in other states. In fact, the cases cited by the *Chrismon* court as upholding conditional use district zoning instead involved systems of conditional zoning. *See, e.g., Haas v. City of Mobile*, 265 So. 2d 564 (Ala. 1972); *Transamerica Title Insurance Co. v. City of Tucson* , 533 P. 2d 693 (Ariz. Ct. App. 1975); *City of Colorado Springs v. Smartt*, 620 P. 2d 1060 (Colo. 1980); *Warshaw v. City of Atlanta*, 299 S.E. 2d 552 (Ga. 1983); *Goffinet v. County of Christian*, 357 N.E. 2d 442 (Ill. 1976); *Sylvania Electric Products, Inc. v. Newton* , 183 N.E. 2d 118 (Mass. 1962); *Housing & Redevelopment Authority v. Jorgensen*, 328 N.W. 2d 740 (Minn. 1983); *Bucholz v. City of Omaha*, 120 N.W. 2d 270 (Neb. 1963);

*Collard v. Inc. Village of Flower Hill*, 421 N.E. 2d 818 (N.Y. 1981); *Sweetman v. Town of Cumberland*, 364 A. 2d 1277 (R.I. 1976); *City of Redmond v. Kezner*, 517 P. 2d 625 (Wash. Ct. App. 1973); *Howard v. Elm Grove*, 257 N.W. 2d 850 (Wisc. 1977).

{32}     Although many courts have approved some form of conditional zoning, no other jurisdiction has approved a system of conditional use district zoning. Those states that have upheld conditional zoning typically do so only if the rezoning would have been permissible without the conditions. The conditions are imposed primarily for the benefit of neighboring landowners. However, under the conditional use zoning system approved by *Chrismon*, a property may be rezoned to a conditional use district when rezoning the corresponding general use district presumably would be impermissible. Indeed, if the property in *Chrismon* had been suitable for all uses within the corresponding general use district, the property owner would have sought rezoning to the general use district, thus avoiding the need to apply for a conditional use permit. *See* Louis W. Doherty, Comment, *Chrismon v. Guilford County and Hall v. City of Durham: Redefining Contract Zoning and Approving Conditional Use Zoning in North Carolina*, 68 N.C.L. Rev. 177, 202 n.213 (1989).

> [B]ecause the premise underlying the decisions of most state courts approving conditional zoning – that the rezoning would have been appropriate even without the conditions – is not a prerequisite for conditional use zoning as approved in North Carolina, the supreme court cannot accurately state that it is joining a growing number of jurisdictions that approve of conditional use zoning. In fact, North Carolina has instituted a novel zoning approach.

*Id.* (citations omitted).

{33}     As discussed above, North Carolina previously invalidated a system of conditional zoning in *Decker v. Coleman*. *Decker* specifically held that a decision to rezone the property, which is legislative in nature, cannot be based on the imposition of certain conditions upon the zoning classification. 6 N.C. App. at 106-07, 169 S.E.2d at 490. However, the City points to the following language in *Chrismon* as evidence that a purely legislative system of conditional zoning is valid in North Carolina: "[We] hold today that the practice of conditional use zoning is an approved practice in North Carolina, so long as the action of the local zoning authority in accomplishing the zoning is reasonable, neither arbitrary nor unduly discriminatory, and in the public interest." 322 N.C. at 617, 370 S.E.2d at 583. Although this language may seem to support legislative conditional zoning, when put into context it is clear that the *Chrismon* court was not intending to validate such a system. The "practice of conditional use zoning" approved by the *Chrismon* court was not purely legislative. Instead, the *Chrismon* court upheld a system of zoning whereby the rezoning decision was made

independently of any conditions; the conditions were imposed in the form of a conditional use permit issued only after a quasi-judicial process. 322 N.C. at 638, 370 S.E.2d at 595. Thus, *Chrismon* did not overrule the holding in *Decker*. Therefore, the rule of law in North Carolina is that conditions on legislative zoning decisions are not enforceable, while conditions on quasi-judicial zoning decisions are.

{34} Finally, the City argues that purely legislative conditional district rezoning is authorized under N.C.G.S. § 160A-382, which grants authority to create conditional use districts. The City asks the Court to read this grant of authority broadly pursuant to N.C.G.S. § 160A-4. The language of that statute provides:

> It is the policy of the General Assembly that the cities of this State should have adequate authority to execute the powers, duties, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of city charters shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect: Provided, that the exercise of such additional or supplementary powers shall not be contrary to State or federal law or to the public policy of this State.

N.C.G.S. § 160A-4 (1999). While this Court acknowledges that the grants of authority contained in the State's zoning laws should be read broadly, it declines to interpret such grants of authority contrary to the language of the statute. As discussed above, the plain language of N.C.G.S. § 160A-382 provides that when a property is rezoned to a conditional use district, "uses are permitted only upon the issuance of a special use permit or a conditional use permit." Additionally, the direction to construe grants of zoning authority broadly is qualified – grants of authority may not be construed to include any powers which are contrary to public policy. N.C.G.S. § 160A-4. It has been a longstanding concern of the courts that zoning decisions must be exercised for the general public good and not the personal benefit of an individual landowner. *See Helms v. City of Charlotte*, 255 N.C. 647, 122 S.E.2d 817 (1961); *In re O'Neal*, 243 N.C. 714, 92 S.E.2d 189 (1956). A purely legislative system of conditional zoning, such as the system purported to be in place in Charlotte, operates contrary to this policy. While, in theory, conditions are imposed for the benefit of the neighboring landowners, in practice the City's system focuses primarily on the requirements and purported uses of the property owner seeking rezoning. The drafters of the statute providing for conditional use district zoning recognized the likelihood of such a problem and therefore included the quasi-judicial permitting process to prevent this potential for abuse.

**Conclusion**

{35}     The City of Charlotte has attempted to implement a purely legislative system of conditional use zoning.  Such a system violates N.C.G.S. § 160A-381, 382, and thus is invalid.  Although conditional use zoning has been approved in North Carolina, both the courts and the legislature have limited such approval to systems which utilize a two step process – a legislative rezoning decision followed by a quasi-judicial determination of whether to issue a conditional use permit.  No decision of an appellate court in this state has approved a one-step, wholly legislative, conditional use zoning procedure.  By statute, a property owner who has been granted a rezoning of his property to a conditional use district is required to apply for a conditional use permit.  *See* N.C.G.S. § 160A-381, 382.  Thus, the conditional use permit may not be written out of a system of conditional use district zoning.  The City of Charlotte's position that the conditional use permit in this case was superfluous and that its purely legislative process was proper is erroneous.

{36}     Therefore it is hereby ordered, adjudged and decreed:

     (1)  Respondent's motion to dismiss the petition for writ of certiorari is DENIED.

     (2)  The petition for a writ of certiorari is GRANTED.

     (3)   The rezoning decision of the City of Charlotte on the petition of Albemarle Land Company, LLC was unlawful and  invalid in that the City Council:

         (a)  failed to follow quasi-judicial procedures,

         (b)  is not able to provide the Court with a record to review,

         (c)   issued the permit and/or made the rezoning decision without the support of competent, material and substantial evidence in the record, and

         (d)  issued the permit in violation of the due process rights of Petitioners.

This the 17th day of April, 2000.

CERTIFICATION

Pursuant to Rule 54 of the North Carolina Rules of Civil Procedure, the Court certifies that there is no just reason for delay in entering this Order or the appeal therefrom.

This the 17th day of April, 2000.

Footnote 1  If a rezoning decision is quasi-judicial in nature, it may be made only after notice to the parties and an evidentiary hearing in which testimony is given by witnesses who are under oath and subject to cross examination.  The decision must be based on substantial, competent, material evidence in the record, and the decision making body must issue written findings of fact.  *See* David W. Owens, *Legislative Zoning Decisions:  Legal Aspects*  12 (Institute of Gov't, 2d ed. 1999).

Footnote 2  The City does not rely on this statute as enabling legislation for its current zoning ordinance.  Rather, in oral argument, the City said it was specifically relying upon N.C.G.S. § 160A-381, 382.

Footnote 3   There are also policy considerations which support the use of a legislative process.  As counsel for the City noted in oral argument, one of the benefits of a purely legislative process is the freedom the various interested parties have to meet and confer with their representatives.  Under the purely legislative process, citizens must have the right to petition their government.  When quasi-judicial procedures are invoked, ex parte communication is prohibited.  The chance for negotiation becomes impossible and the process becomes adversarial.  In municipalities where there is a combination of legislative and quasi-judicial processes, the line is hard to draw with respect to ex parte communications.  In the case *sub judice*, that issue is not clearly presented because the City concedes it did not follow a quasi-judicial process.  Either the legislature or the appellate courts should address this issue in the future if, as the Court believes, conditional use zoning requires a quasi-judicial permitting process.  One possible solution is to require a bifurcated process.  Any process must insure that the courts can fulfill their role on a writ of certiorari.